**Jacob R. KELLY, Respondent,**

v.

**Gaytha Jane KELLY, Appellant,**

**Debra Jane McDowell and Anthony Martin McDowell, Appellants.**

**Nos. WD 67736, WD 67737.**

Missouri Court of Appeals, Western District.

Feb. 19, 2008.

Grace Day, William Walker Bird, St. Joseph, for Appellant.

Gerald Lyford Liles, St. Joseph, for Respondent.

Before RONALD R. HOLLIGER, Presiding Judge, HAROLD L. LOWENSTEIN, Judge, and JAMES M. SMART, JR., Judge.

RONALD R. HOLLIGER, Presiding Judge.

Gaytha Jane Kelly ("Mother"), along with Debra and Anthony McDowell ("Grandparents"), appeal the judgment of the trial court modifying physical custody regarding the sole child ("Child") of her marriage to Jacob Kelly ("Father").

The joint brief filed by Mother and Grandparents raises six points on appeal. In their first and second points on appeal, they contend that the trial court erred in asserting jurisdiction over Father's motion to modify. They contend that the modification court lacked jurisdiction of the custody modification motion because there was an outstanding guardianship order placing custody of the child with the grandparents. They contend that under something called the "concurrent jurisdiction doctrine" the modification court was required to dismiss Father's motion to modify the dissolution order unless the guardianship had been previously terminated. We disagree with appellants and find that the modification court did have jurisdiction, but find that the court erred in entering a conflicting custody order before termination of the guardianship. Because of this finding we need not consider the other arguments raised, and reverse and remand for further proceedings.

**Factual and Procedural Background**

After two years, Father and Mother's marriage was dissolved on February 13, 2004. During their marriage, they had a daughter born May 18, 2002. In the dissolution, the trial court awarded the parents joint legal and physical custody of Child. According to the parenting plan, from September to May, Child was to reside primarily with Mother, with alternate weekends and one day per week with Father. Father was awarded physical custody for

June, July, and August with alternate weekends and one day per week with Mother during those months.

At the time of the dissolution, Mother and Child had been living with Grandparents in St. Joseph for several months. Mother and Child continued living with Grandparents once the dissolution was finalized. During the spring of 2004, Mother turned twenty-one and began frequenting bars with her friends. In June 2004, Father took physical custody of Child in accordance with the parenting plan. When Child was with Father that summer, Mother began going to bars with greater regularity. Grandparents worried that Mother was socializing with an irresponsible group of friends, staying out late, and occasionally not coming home.

By September 2004, when Mother was scheduled to have physical custody of Child, Grandparents were afraid that she might move out of their home and take Child with her. To prevent this from happening, Grandparents believed they needed to obtain a guardianship over Child. Before going to the probate division, Grandparents approached Father, explaining their fears and asking him to consent to the guardianship. Father testified that Anthony McDowell ("Stepgrandfather") called him to say his attorney told him that establishing a guardianship over Child would be the only way to ensure her safety. Following that phone call, Father called Grandparents' attorney to discuss the issue of guardianship; he did not seek independent counsel. Father then met with Grandparents and their attorney to further discuss the guardianship. Father testified that he was told the guardianship would have no effect on his legal rights, but would merely allow Grandparents to take over Mother's rights. He testified that Grandparents assured him he would see Child according to the same schedule ordered in the parenting plan. He further testified that everyone agreed the long—term goal was for Father to save enough money for an attorney so that he could seek sole custody of Child.

After consulting their attorney and Father, Grandparents went to the probate division, seeking guardianship over Child. The court found that, under section 475.030.4(2),[1] Father had consented to the guardianship and Mother was unfit to assume guardianship duties.[2] The court established guardianship over Child with Grandparents in September 2004.

Once Grandparents were appointed guardians, Child remained with them while Mother moved in with a friend in St. Joseph. In February 2005, Mother moved into another apartment in St. Joseph. In spring 2005, Mother pled guilty to charges of riding in a stolen vehicle and receiving stolen property. She was fined and placed on probation with the requirement that she report monthly and complete twenty—five hours of community service.

At some point following the dissolution, Father moved from his parents' home into a house he bought with a woman who is now his wife, Lauren Kelly ("Stepmother"). From June until September 2005, Child stayed with Father and Stepmother under the terms of the parenting plan ordered in the dissolution decree. In June 2005, Mother gave birth to another child and began attending counseling sessions at Grandparents' church. Mother lived in In-

---

1. All statutory references are to Missouri Revised Statutes, 2000, unless otherwise indicated.

2. Under section 475.030.4(2), a court may establish guardianship "[w]here the parents ... of a minor are unwilling, unable or adjudged unfit to assume the duties of guardianship."

dependence briefly during August 2005 and finally moved back into Grandparents' home in September 2005, where she has remained.

Father filed a motion to modify custody in February 2006, seeking sole physical custody of Child. He served the motion on Mother and Grandparents. In their answer, Grandparents sought dismissal of the motion. Mother's answer included a counter—motion to modify in which she sought sole physical custody of Child.[3] Mother then moved to dismiss Father's motion, arguing that Father had no standing due to the intervening guardianship. The circuit court denied Mother's motion without explanation.

The hearing on the motion to modify custody took place in September 2006. Grandparents supported Mother's efforts to retain joint physical custody, but did not seek custody for themselves. Before the hearing commenced, Grandparents' attorney stated that the facts which had prompted them to seek guardianship "no longer exist at this time." The attorney further stated, "Whatever the Court decides in this matter will conclude the guardianship situation." During the hearing on the motion to modify custody, the circuit court heard testimony from Mother, Father, Stepmother, Stepgrandfather, Mother's stepuncle, a childcare provider, and Grandparents' neighbor and ministers. On October 27, 2006, the court awarded joint legal custody to the parents, with sole physical custody to Father. Under the new parenting plan, Mother has parenting time on alternating weekends and one evening each week. She also has custody for two weeks of each month during summer vacation, totaling six weeks; holidays are evenly split with Father. Mother and Grandparents appeal the judgment in a joint brief.

## "Concurrent Jurisdiction Doctrine"

■ Appellants contend that the trial court lacked jurisdiction of Father's motion to modify under the "concurrent jurisdiction doctrine." They contend that under that doctrine a court has no "competency" to hear the modification order when either there is an outstanding guardianship order or there is a pending motion to terminate the guardianship. Thus, they argue that the modification court had no choice but to immediately dismiss Father's motion. Their argument is based primarily upon *In the Interest of Moreau*, 161 S.W.3d 402, 407 (Mo.App. S.D.2005).

*Moreau* was a case procedurally similar to the instant case. In that case, the probate court granted guardianship of the child to the grandparents. *Moreau*, 161 S.W.3d at 404. Later that year, a North Carolina court granted the child's parents, the Roysters, a divorce, but lacked jurisdiction to enter a custody order.[4] *Id.* Two years later, Mr. Royster filed a petition to terminate the guardianship and filed a separate petition for custody in circuit court. *Id.* The *Moreau* court characterized the simultaneously pending cases as a jurisdictional issue, requiring a *sua sponte* dismissal of the custody case. *Id.* at 405. The *Moreau* court stated, "[t]he jurisdiction of a court to adjudicate a controversy rests on three essential elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the res or the parties; and (3)

---

**3.** his counter—motion was later amended to request retention of joint custody and a change in the support amount.

**4.** Under the Uniform Child Custody Jurisdiction Act, the North Carolina court lacked jurisdiction to enter an order regarding custody or visitation. *Moreau*, 161 S.W.3d at 404; sections 452.440–452.550.

jurisdiction to render the particular judgment in the particular case." *Id.*

In *Moreau*, as in the case at bar, the motion court had personal jurisdiction over all parties involved since all appeared voluntarily without contesting the issue. *See* Rule 55.27(g). Both the probate division and the circuit court also had subject matter jurisdiction, the court's authority to hear cases of a particular class. *Moreau*, 161 S.W.3d at 405. The *Moreau* court continued its analysis by stating that once personal and subject matter jurisdiction is established, the issue is whether the trial court had "jurisdiction to render the particular judgment in the particular case," or, whether the concurrent jurisdiction doctrine applies, preventing the trial court from hearing the motion to modify. *Id.* at 405–06.

Citing *Moreau*, Mother and Grandparents argue that while the trial court had personal jurisdiction over all parties involved and subject matter jurisdiction to determine custody, it was lacking "jurisdiction to render the particular judgment in the particular case." *Id.* at 405. This third species of jurisdiction is sometimes referred to as jurisdictional "competency." *See State ex rel. Lambert v. Flynn*, 348 Mo. 525, 154 S.W.2d 52, 57 (banc 1941).

Although the procedural posture of *Moreau* is similar, it is not identical to this case. In *Moreau*, the probate division issued letters of guardianship to the child's grandparents, the Councils. *Moreau*, 161 S.W.3d at 404. Mr. Royster filed a petition to terminate the guardianship, while simultaneously filing a petition for custody in the circuit court. *Id.* at 404, 405, 406. The probate division denied Mr. Royster's petition to terminate guardianship and awarded custody to the Councils. *Id.* at

405. In the circuit court proceeding for custody, Ms. Royster, the mother, "timely raised the trial court's lack of jurisdiction . . . in her answer and again by way of an oral motion to dismiss at the commencement of the trial." *Id.* at 406. The circuit court overruled Ms. Royster's motion, sustained the Councils' motion to intervene, and awarded custody to the Councils. *Id.* at 404, 405, 406.

Mr. Royster appealed both judgments separately.[5] *Id.* at 405. The Southern District first affirmed the probate division's judgment denying termination. *Id.* On separate appeal from the dissolution court's judgment, the *Moreau* court found the third jurisdictional element lacking, holding that the trial court had run afoul of the concurrent jurisdiction doctrine. *Id.* at 406. The Southern District remanded the case for the trial court to vacate its judgment and dismiss the rest of the petition for lack of jurisdiction. *Id.* at 408.

We disagree with appellants' interpretation of *Moreau* that the motion court had no jurisdiction to allow the modification motion to even be pending. We also disagree with *Moreau* to the extent that it can be read to hold that the circuit court lacked any jurisdiction over the petition for custody and that the appellate court therefore lacked jurisdiction over the appeal. Nevertheless, *Moreau* correctly explains some of the history of the abatement doctrine and serves as an example of some of the legal confusion and misuse of terminology in cases where more than one court can have subject matter jurisdiction of the same person and proceeding.

█ Many types of cases may present issues where more than one court properly has subject matter jurisdiction over the

---

**5.** These cases were consolidated for trial, but the judgments were entered separately. *Moreau*, 161 S.W.3d at 405.

same matter or issue. One of the most common is the area of child custody. "In Missouri, the custody of a child may be adjudicated in at least five types of actions: (1) dissolution; (2) habeas corpus; (3) juvenile; (4) guardianship; and (5) paternity." *Id.* at 405–06. Either the probate division or a court hearing a dissolution of marriage issue can decide child custody. Sections 452.375.5(5), 472.020, and 475.030.4(2). The probate division has exclusive jurisdiction to hear guardianship cases. *McCoy v. Rivera,* 926 S.W.2d 78, 81 n. 2 (Mo.App. W.D.1996). "The probate division of the circuit court has the same legal and equitable powers to effectuate and to enforce its orders, judgments and decrees in probate matters as circuit judges have in other matters . . . ." Section 472.030. But, the circuit court that granted the dissolution also retains jurisdiction of the child and is a proper forum to determine fitness or custody. *In re R.L.K.,* 508 S.W.2d 232, 233–34 (Mo.App. 1974).

Other cases have involved conflicts between different courts' jurisdiction of criminals sentenced under the now defunct criminal sexual psychopath law (CSP) and the current Sexually Violent Predator (SVP) law. *See In re the Care & Treatment of Lieurance,* 130 S.W.3d 693 (Mo. App. S.D.2004); *Barlow v. State,* 114 S.W.3d 328 (Mo.App. W.D.2003) (both cases holding that because the legislature had expressly granted authority to the probate division to hear SVP actions involving defendants under the repealed CSP law, that the probate division had jurisdiction to proceed despite the continuing jurisdiction of CSP court). And in *State ex rel. Standefer v. England,* 328 S.W.2d 732 (Mo.App.1959), the court considered whether a probate court could entertain a guardianship proceeding while the proposed ward was also under the jurisdiction of a criminal court hearing a pending charge. *Standefer,* 328 S.W.2d at 735, 736 (holding that the probate court could not interfere with jurisdiction regarding guardianship of the person, but could assert jurisdiction over the estate of the proposed ward).

Perhaps the most well known examples of these issues and principles is where two identical civil actions are filed in different courts having proper jurisdiction of the subject matter. A classic illustration is simultaneous dissolution proceedings in different counties. *See State ex rel. Kincannon v. Schoenlaub,* 521 S.W.2d 391, 393–94 (Mo. banc 1975). Other examples are recent cases addressing the question of whether a court's continuing jurisdiction in a Chapter 211 juvenile proceeding precludes another court from hearing a Chapter 453 custody action involving the same child. *See State ex rel. Womack v. Rolf,* 173 S.W.3d 634 (Mo. banc 2005); *Blackburn v. Mackey,* 131 S.W.3d 392, 396–98 (Mo.App. W.D.2004).

■ We think that the common principle in all of these cases has two purposes. The first is "to avoid confusion, inefficiency and unseemly 'turf battles' between courts." *Barlow,* 114 S.W.3d at 334. The second is to avoid inherently conflicting judgments, both enforceable on their face, in totally inapposite manners. *State ex rel City of Springfield v. Conley,* 760 S.W.2d 948, 950 (Mo.App. W.D.1988). Otherwise stated, the principles in these cases are intended to manage the potential conflicts and inefficiency that can occur when more than one court has jurisdiction of the same subject matter. It is, thus, in some sense a misnomer to describe the concurrent jurisdiction doctrine as depriving one court of jurisdiction. "Concurrent jurisdiction" is simply a phrase describing the legal reality that more than one court has the legal authority to decide a matter. It is

not an evaluative principle distinguishing between two potential decision-makers. Other rules determine how the conflict may be resolved.

This observation is particularly true when considered in the context of subject matter jurisdiction. Such jurisdiction comes from constitutional and statutory principles. It is not court made. What the *Moreau, Barlow,* and *Lieurance* cases, among others, describe as "jurisdiction to render the particular judgment in the particular case," *Moreau,* 161 S.W.3d at 405, is a court-made rule subject to modification and interpretation by both the legislature and the courts. *See Barlow,* 114 S.W.3d at 334 (the legislature gives priority to the court handling the SVP matter);[6] *State ex rel. Kincannon v. Schoenlaub,* 521 S.W.2d at 393 (giving priority to the first filed, rather than first served, of two competing dissolution proceedings).

Some courts have conflated the term "concurrent jurisdiction doctrine" with the "pending action doctrine" and "abatement doctrine." *See, e.g., Moreau,* 161 S.W.3d at 405; *Barlow,* 114 S.W.3d at 333. We disagree with that characterization. Rather, the pending action doctrine and abatement doctrines are legal rules for resolving conflicts between the identical and proper subject matter jurisdiction of two courts. Although some courts have described these doctrines as interchangeable, they are different in some respects.

▇ The abatement doctrine technically does not apply unless the issues are the same, and the alignment and identity of the parties is identical. *Cf. Conley,* 760 S.W.2d at 950 (acknowledging that the rule is not inflexible and may apply in some situations even though the parties are reversed.) The pending action doctrine is described in Rule 55.27(a)(9), which has been said to codify the common law doctrine of abatement. *Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co.,* 119 S.W.3d 551, 556 (Mo.App. E.D.2003). But the pending action defense can be waived under the express provision of Rule 55, which states that "[a] defense [ ][t]hat there is another action pending between the same parties for the same cause in this state . . . is waived" if not made by motion "nor included in a responsive pleading." Rule 55.27(g)(1)(F). One would never view subject matter jurisdiction as being waivable. In fact, Rule 55.27(3) recognizes the difference between the abatement doctrine and subject matter jurisdiction, stating that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." Rule 55.27(3) (emphasis added). Nonetheless, at least one case purportedly involving the pending action or abatement doctrines has held that courts must address the matter *sua sponte,* analogizing it to non—waivable subject—matter jurisdiction. *See Moreau,* 161 S.W.3d at 405. Again, subject matter jurisdiction is not usually something considered waivable in some circumstances and not in others. Can these cases be reconciled? We believe they can.

The various cases discussing these principles have the twin goals of avoiding wasteful duplication and inconsistent judgments. The first goal may be flexible under some circumstances. *See, e.g., Green v. Miller,* 851 S.W.2d 553, 556 (Mo. App. W.D.1993) (recognizing a trial court's discretionary "power to grant a stay of proceedings on the ground that another action is pending"). The pending action doctrine is not intended to foster inefficiency, and it may be proper in some cir-

---

6. Consider also in this context the provisions of the juvenile code, section 211.093. Giving priority to the juvenile court over a prior dissolution custody order.

cumstances to allow the second action to pend simultaneously with another. This potential efficiency was recognized by this court in the situation where we allowed a modification of a custody order to pend simultaneously with a juvenile proceeding so that when juvenile jurisdiction was released there was no gap in custody provisions. *See Blackburn*, 131 S.W.3d at 396–98 (upholding a trial judge's decision to release jurisdiction in a Chapter 211 case before entering a judgment in a Chapter 452 case). These types of cases involve not the existence (or exclusiveness) of jurisdiction but the priority of its exercise.

Where the second goal is involved (avoiding inconsistent judgments) different considerations apply. It is axiomatic that inconsistent judgments cannot ordinarily exist together.[7] We believe, however, that it is incorrect to describe this as a matter of jurisdiction, which is the power to hear a particular type of case. Rather, it is an error of law.

Our Supreme Court has recognized, in both a related and different context, that the term jurisdiction has been overused and misused to describe situations where it was simply legally erroneous to enter a conflicting judgment while another action was pending or a judgment involving the same issue still in effect. In *Womack*, the relator filed an adoption petition while an abuse and neglect proceeding was pending. *Womack*, 173 S.W.3d at 635. The relator argued that the adoption proceeding could not be pending because of the provisions of section 211.093 giving precedence to the juvenile court under Chapters 210 and 211 over an adoption proceeding under chapter 453. *Id.* at 636. Although not using the term "jurisdiction," the court held that there was "no inconsistency in permitting

an adoption action to be filed during the pendency of a chapter 211 proceeding . . . so long as no inconsistent order is entered by the judge." *Id.* at 635. The court, moreover, favorably noted that both proceedings were before the same judge and that the potential for inconsistency could be avoided by releasing juvenile jurisdiction immediately before granting the adoption without leaving the child "in legal limbo." *Id.* at 638 (citing *D.G.N. v. S.M.*, 691 S.W.2d 909, 914 (Mo. banc 1985)).

A year later, the Supreme Court took up the issue of "judicial competency" or the jurisdiction "to render the particular judgment in the particular case" in *In re the Marriage of Hendrix*, 183 S.W.3d 582 (Mo. banc 2006). In *Hendrix*, a parent argued that a court lacked jurisdiction to modify a custody order on stipulated facts because a proper motion, notice, and opportunity to be heard were jurisdictional prerequisites under other case law. *Hendrix*, 183 S.W.3d at 587. The court rejected the concept that a judgment is necessarily void and entered without jurisdiction if jurisdictional prerequisites are not followed. *Id.* at 590. The court also said "[t]he label 'jurisdictional defect' is seldom appropriate outside the context of lack of jurisdiction of the subject matter or of the person." *Id.* "The tendency to call matters 'jurisdictional' that are really only assertions of legal error greatly confuses the notion of jurisdiction in civil cases." *Id.*

■ We hold that the modification court had subject matter jurisdiction to modify the custody order and that Mother and Grandparents raise an issue that is not actually jurisdictional. *See id.* Nevertheless, the trial court legally erred in entering a judgment conflicting with the

---

7. Consider as an exception the situation where a juvenile court issues a custody order that conflicts with a prior dissolution custody order. An SVP proceeding in the face of an existing CSP order is also an example.

guardianship order before that order was terminated. The court should have taken steps to consolidate the two proceedings both for purposes of judicial efficiency and avoidance of inconsistent judgments. *See Blackburn,* 131 S.W.3d at 396–98. The matters can be consolidated before either the modification court or the probate division; although, at this point, it would seem more efficient to consolidate the matters in front of the modification court, since it has already heard the evidence.

The cause is remanded for further proceedings consistent with this opinion.

HAROLD L. LOWENSTEIN, Judge, and JAMES M. SMART, JR., Judge, concur.