

# Missouri Court of Appeals

## Southern District

### Division Two

U.S. BANK, N.A., f/k/a BANK OF
AMERICA, N.A., and ARVEST
BANK,

    Plaintiffs/Lienholders-
    Respondents,

v.

DOUGLAS L. COVERDELL, and
COVERDELL ENTERPRISES, INC.,

    Defendants-Appellants,

and

COMMUNITY BANK OF THE OZARKS,
INC.,

    Defendant,

and

HCW DEVELOPMENT COMPANY,
LLC, HCW PRIVATE DEVELOPMENT,
LLC, and HCW NORTH, LLC,

    Defendants-Respondents,

and

CITY OF BRANSON, MISSOURI, and
THE EMPIRE DISTRICT ELECTRIC
COMPANY,

    Intervenors-Respondents.

Nos.  SD32844, SD32845
       SD32934, and SD32935
       (consolidated)

**Filed: Oct. 30, 2015**

1



# Missouri Court of Appeals

## Southern District

### Division Two

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Timothy W. Perigo, Circuit Judge

## REVERSED AND REMANDED WITH DIRECTIONS

This consolidated opinion addresses four separate appeals stemming from summary judgments granted in a lawsuit filed in 2011 to quiet title to real estate located in the Branson Landing subdivision ("the 2011 case").[1] The appeals are brought by Defendants Douglas L. Coverdell ("Coverdell") and Coverdell Enterprises, Inc. ("CEI") (collectively, "Appellants"), and these appeals are related to two other appeals brought by Appellants arising out of another lawsuit filed in 2003 ("the 2003 case"). That case also involved land located in the Branson Landing subdivision, and our opinion deciding those consolidated appeals is being issued this same date. *See Empire District Electric Company v. Coverdell*, \_\_\_\_ S.W.3d \_\_\_\_, Nos. SD32806 and SD32807 slip op. (Mo. App. S.D. Oct. 30, 2015) ("*Empire II*").[2] We hold in *Empire II* that the trial court committed prejudicial error when it dismissed with prejudice Coverdell's adverse possession claim in the 2003 case. As a

---

[1] Any reference in this opinion to "Lots" or a specific lot number, e.g., "Lot 1," refers to lots in Branson Landing.

[2] *Empire II* was preceded by a previous appeal in the 2003 case, *see Empire Dist. Elec. Co. v. Coverdell*, 344 S.W.3d 842, 853 (Mo. App. S.D. 2011) ("*Empire I*"), in which a judgment entered in 2010 ("the 2010 judgment") was reversed and remanded for further proceedings, including the filing of amended pleadings and intervention in the case by interested third parties. We take judicial notice of our own records from *Empire I* and *Empire II* as necessary to provide a more complete understanding of the context of the appeals addressed in this case. *See Savannah Place, Ltd. v. Heidelberg*, 164 S.W.3d 64, 65 n.1 (Mo. App. S.D. 2005).

result, that opinion reverses three summary judgments and remands the case for further proceedings consistent with the opinion. *Id.* at 4.

We also reverse three summary judgments entered in this case, but we do so for a different reason. The reason the summary judgments entered in the instant case must be reversed is that this case should not have proceeded while the 2003 case remained unresolved. We therefore remand the matter with a direction that the trial court stay these proceedings pending a final resolution of the 2003 case.

### Overview of Claims and Challenged Judgments

Plaintiffs Arvest Bank ("Arvest") and U.S. Bank (collectively, "Lienholders"); Defendants HCW Development Company, LLC ("HCW Development"), HCW Private Development, LLC ("HCW Private"), and HCW North, LLC ("HCW North" and these defendants, collectively, "HCW Entities"); and two intervenors, the City of Branson ("Branson") and the Empire District Electric Company ("Empire"), have all filed briefs and will be referred to collectively as "Respondents."[3]

---

[3] U.S. Bank was substituted for Bank of America, N.A., a national banking association. For simplicity, anywhere Bank of America appeared in the pleadings, U.S. Bank will be substituted in this opinion. The full designation for U.S. Bank in this case is "U.S. Bank National Association, a National Banking Association, Trustee for the Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2007 GG9, Commercial Mortgage Pass-Through Certificates, Series 2007-GG9[.]" The other named defendant in the case, Community Bank of the Ozarks ("Community Bank"), did not file a brief in these appeals. Lienholders originally included "John Doe and Jane Doe" as defendants and alleged that the "actual names and identities are unknown to these plaintiffs[.]" Lienholders used these names as representing

> all the unknown and/or unborn, spouses, heirs, devisees, grantees, assignees, donees, aliases, legatees, administrators, executives, guardians, mortgagees, trustees and legal representatives of [Empire], The Branson Paper, Inc.[, Coverdell], Julia A. Coverdell, [CEI], Tori, Inc. [("Tori")], Peter H. Rea and Darlene Weaver Rea, both individually and in their capacity as statutory trustees of [Tori], The Branson Label, Inc. [("Branson Label")], Lillian E. Compton, and anyone having or claiming to have any interest in the real estate referred to herein.

Arvest kept John Doe and Jane Doe as parties in its amended petition, *infra*. Apart from Empire -- which formally intervened in its own name -- no other person or entity described in this manner has filed a brief.

Lienholders filed this case after the 2010 judgment was entered in the 2003 case and while the appeal of that judgment was pending before this court. *See Empire I*, 344 S.W.3d at 844. After multiple amendments had been made to the petition in the instant case, U.S. Bank ultimately sought to quiet title, based upon deeds or, alternatively, adverse possession, in Branson as to Lots 1 and 4 and in Empire as to Lots 3 and 6.[4] U.S. Bank also sought declarations, *inter alia*, that: (1) the lease by Branson as to Lot 6 and the sublease by HCW Private as to land we will refer to as "Retail Tract" were valid;[5] (2) U.S. Bank possessed "a valid leasehold deed of trust" with "a first lien position" encumbering Retail Tract; and (3) Appellants had no rights to "any part of Lots 1, 3, 4 or 6[.]"[6] U.S. Bank alleged that its deed of trust ("U.S. Bank deed of trust") encumbering Retail Tract was used to secure a $90,000,000 indebtedness.

Arvest's claim, based upon a chain of deeds, sought to have title quieted in Branson as to Lot 1 and in Empire as to Lot 6. It also sought declarations, *inter alia*, that: (1) Branson had a valid lease of Lot 6; (2) HCW Private had a valid sublease as to Retail Tract, (3) HCW North had valid leases as to two tracts in Lot 1 that we will refer to as "Northwest Tracts"; (4) Arvest had a valid first lien as to Northwest Tracts; and (5) Appellants had no

---

[4] "**U.S. BANK'S SECOND AMENDED PETITION TO QUIET TITLE, FOR DECLARATORY JUDGMENT AND OTHER RELIEF**" ("U.S. Bank's amended petition") made no express claims on behalf of Arvest, and it was filed after "**SECOND AMENDED PETITION**" ("Arvest's amended petition") was filed. Arvest's amended petition purports to be on behalf of both plaintiffs, but at the February 2012 hearing, where leave was granted for its filing, counsel for U.S. Bank stated that it "was filed before [U.S. Bank's] substitution of counsel. [U.S. Bank] intends to file its own motion for leave to file a second amended petition very shortly."

[5] Retail Tract is described in U.S. Bank's amended petition as "Exhibit A" and it is reproduced in the appendix to this opinion ("the Appendix"). This reproduction and others in the Appendix are cropped from images of the relevant portions of the cited documents, and they therefore retain the original fonts, formatting, and text from the materials as they appeared in the legal file.

[6] U.S. Bank's claim against Community Bank for slander of title was voluntarily dismissed in the 2011 case after Appellants filed their notices of appeal in SD32844 and SD32845.

right to "any part of Lots 1 and 6[.]"[7] Arvest asserted in its statement of uncontroverted facts that Arvest's deed of trust ("Arvest deed of trust") encumbering Northwest Tracts was executed to secure a debt "in the maximum amount of $3,956,250.00[.]"

Branson's cross-claim sought to quiet title in itself as to all of Lots 1 and 4, and in Empire as to all of Lots 2, 3, and 6 based upon deeds, or alternatively, adverse possession. Branson also sought a decree, *inter alia*, that Appellants "have no right, title or interest in and to or right of possession to any of the Branson Landing[.]" HCW Entities and Empire answered Lienholders' claims, but they made no additional, specific claims for relief.

Appellants asserted "**CLAIMS AGAINST PLAINTIFF AND OTHER DEFENDANTS**" as a part of their response to U.S. Bank's amended petition. These claims sought to quiet title in Appellants as to "Property A and Property B" based upon a chain of deeds, and, in the alternative, to quiet title to these same properties in Coverdell based upon adverse possession (the alternative claim will hereinafter be referred to as "Appellants' claim"). Appellants also sought a declaration, *inter alia*, that Empire, Branson, and Lienholders had no rights in Property A and Property B. We observe -- without so holding -- that Property A may overlap part of the peninsula and an area south of the peninsula in Branson Landing, and Property B appears to be a smaller portion of Property A, which Coverdell allegedly conveyed to CEI.[8]

The instant appeals challenge the following three judgments, which we will collectively refer to as "the summary judgments": (1) a June 2013 judgment ("U.S. Bank's judgment") certifies as final a September 2012 summary judgment entered in favor of U.S.

---

[7] Northwest Tracts are described in Arvest's amended petition as "HCW North-1" and "HCW North-2" and reproductions of the legal descriptions for Northwest Tracts are set forth in the Appendix.
[8] Reproductions of the legal descriptions for Properties A and B, as stated in Appellants' claim, are included in the Appendix.

Bank ("U.S. Bank's interlocutory judgment") declaring, *inter alia*, that: (a) title is quieted in Branson as to the parts of Lots 1 and 4, and in Empire as to the parts of Lots 3 and 6, each of which are described in Retail Tract; (b) HCW Private has a valid lease in Retail Tract; (c) U.S. Bank deed of trust is valid and is the first lien; and (d) Appellants have no "right, title or interest, in and to, or right of possession of" Retail Tract[9]; (2) an August 2, 2013 summary judgment on Branson's motion ("Branson's judgment") that, *inter alia*: (a) quieted title in favor of Branson as to specific portions of Lot 1 described as "The Western Peninsula" ("Western Peninsula") and "Park Addition[,]" and in favor of Empire as to specific portions of Lots 2 and 6 described as the "Branson Town Company Tract" ("Branson Town"); (b) denied any right of Appellants in Lots 1, 2, and 6, or of "Western Peninsula, Park Addition, [Branson Town and] Eastern Peninsula [sic]"; (c) dismissed with prejudice Appellants' "Amended Claim" for "fail[ure] to state a claim upon which relief can be granted"; and (d) denied dismissal of the 2011 case.[10]; and (3) an August 5, 2013 summary judgment in favor of Arvest ("Arvest's judgment") that, *inter alia*: (a) quieted title in favor of Branson as to Northwest Tracts, and denied any right by Appellants to these parts of Lot 1; and (b) dissolved pertinent notices of lis pendens.

### Background Regarding the Claims and Judgments Entered in the 2003 Case After the Remand Ordered in *Empire I*

Lienholders successfully intervened in the 2003 case after our remand in *Empire I*, claiming that they held separate deeds of trust that secured financing for lessees --

---

[9] We do not hold that the legal descriptions in U.S. Bank's and Arvest's judgments exactly match those set forth in these parties' respective amended petitions. We will nonetheless use the same labels as those used by the parties for parcels that appear similar. As a result, the legal descriptions from these summary judgments appear in the Appendix under the headings "U.S. Bank's Judgment - Retail Tract" and "Arvest's Judgment - Northwest Tracts."

[10] Legal descriptions reproduced from Branson's judgment for Western Peninsula, Park Addition, and Branson Town are included in the Appendix. A legal description for "Eastern Peninsula" does not expressly appear in Branson's judgment.

$90,000,000 as to U.S. Bank's interest, and $3,956,250 as to Arvest's interest. ***Empire II*** at 3. U.S. Bank's cross-claim sought to quiet title in Branson as "to all of Lots 1 and 4" and in Empire as "to all of Lots 3 and 6[.]" ***Id.*** at 10. It further sought a declaration that Appellants had no right or interest as to "Lots 1, 3, 4 or 6[.]" ***Id.*** Arvest's cross-claim against Appellants sought to quiet title in Branson as "to all of Lot 1" and in Empire as to "all of Lot 6[,]" ***id.*** at 9, as well as a declaration that Appellants had no interest in this land. ***Id.*** Branson claimed "that Empire owned Lots 2, 3, and 6; that Branson owned Lots 1 and 4; and Branson leased the lots owned by Empire." ***Id.*** at 3. Empire claimed ownership of what we refer to as "Eastern Peninsula" and "Branson Town[.]" ***Id.*** at 2-3. Appellants' answers and separate cross-claims sought decrees that Coverdell owned "Property A" by either deed or adverse possession and that he had conveyed a portion of that land, identified as "Property B[,]" to CEI. The legal descriptions used for Properties A and B in the 2003 case and in the instant case appear to be identical. *See **id.*** at 13 n.12, and 54.

U.S. Bank then received a judgment in the 2003 case that did not expressly decree quiet title in Branson or Empire, but it did conclude that Branson owned a part of Lot 1 and that Empire owned a part of Lot 6, both being in Retail Tract. ***Id.*** at 24-25. We refer to this smaller portion of Retail Tract as "Retail North."[11] ***Id.*** at 25. U.S. Bank's 2003 case judgment declared U.S. Bank's deed of trust to be a valid, "first priority" encumbrance on Retail North, and it denied Appellants any interest in Retail North. ***Id.*** at 25-26.

Branson received a judgment in the 2003 case that quieted title in Empire as to the parts of Lot 2 known as Eastern Peninsula and Branson Town, and it quieted title in Branson

---

[11] A reproduction of the legal description for Retail North taken from Exhibit A to U.S. Bank's 2003 case judgment, along with a map taken from Exhibit B to the same judgment, is included in the Appendix.

7

as to the parts of Lot 1 known as Western Peninsula and Park Addition.[12] *Id.* at 26. Branson's 2003 case judgment denied Appellants any right or interest in "'Western Peninsula, Eastern Peninsula, Park Addition[, and Branson Town] now known as Lots 1, 2 and 6[.]'" *Id.* at 26.

Arvest received a judgment in the 2003 case that quieted title in Branson as to Northwest Tracts in Lot 1, declared leases and subleases for HCW Entities valid, and declared Arvest's deed of trust to be the lien of first priority. *Id.* at 23-24. Arvest's 2003 case judgment also declared that Appellants had no right or interest in Northwest Tracts. *Id.* at 24.

### Additional Procedural History in the Instant Case

As in our related *Empire II* opinion, we again focus on the procedural history of this case relevant to Appellants' points on appeal, including various claims asserted by the parties.[13]

After the original petition was served, Appellants moved to dismiss the case in August 2011, based on an assertion that Lienholders lacked standing or, alternatively, that the case be stayed based on litigation involving "the property" being addressed in the 2003 case ("Appellants' first dismissal motion"). Appellants' motion asserted, *inter alia*, that Lienholders' filed the instant case "seeking to quiet title to property that [they] admit is already the subject of another quiet title suit that has been in litigation in this [c]ourt for more than eight years," and then relied on the principle that a second action may be stayed

---

[12] A reproduction of the legal description for Eastern Peninsula taken from Branson's 2003 case judgment is included in the Appendix.

[13] As with *Empire II*, the points asserted here do not lead us to review whether there is a "genuine issue of material fact[,]" *McLallen v. Tillman*, 386 S.W.3d 837, 839 (Mo. App. S.D. 2012), or an "entitle[ment] to judgment as a matter of law" based upon uncontroverted facts supporting Respondents' deed-based interests. *Id.* at 7 n.9.

where a prior pending action would adequately determine the parties' rights, citing ***Brink v. Kansas City***, 217 S.W.2d 507, 510 (Mo. banc 1949). It does not appear from the docket that Arvest responded to Appellants' first dismissal motion. U.S. Bank's position was that it had standing and that the 2003 case would "not determine [U.S. Bank's] rights to its property because that case concerns only property against which Coverdell has asserted a claim, and it is a different property." Appellants' motion was denied in March 2012.

Later that same month, Appellants filed another motion to dismiss or stay the case ("Appellants' second dismissal motion"). This motion also cited ***Brink*** and added that Lienholders had intervened in the 2003 case. U.S. Bank's response suggested that in the 2003 case, Appellants claimed "part of the land encumbered by" the U.S. Bank deed of trust and, in the instant case, U.S. Bank made "claims concerning parcels in which [Appellants] have no claim."

Arvest adopted U.S. Bank's response, and it also filed its own suggestions, adding that the pleadings in the 2003 case only dealt with "the eastern half of the peninsula" and that the land in the 2011 case "lies entirely in the west half of the peninsula" and south of it. HCW Entities moved to strike Appellants' second motion to dismiss on the ground that Appellants had not been granted leave to file a second motion.

On June 6, 2012, U.S. Bank filed its motion for summary judgment based on Count I of its amended petition addressing Lots 1, 3, 4, and 6; a statement of uncontroverted facts; and a memorandum of law. At a June 8, 2012 hearing, the trial court informed the parties that the instant case was to be "litigated first" before the 2003 case, and Appellants' second dismissal motion was treated as having been denied.

On June 15, 2012, Appellants filed an answer to Arvest's amended petition that presented no separate counter-claim. On July 26, 2012, Appellants filed a response to U.S. Bank's summary judgment motion asserting that there was "a genuine issue of material fact[,]" requesting additional time to complete discovery, and including an affidavit of counsel representing Appellants. None of these filings included a response by Appellants to the specifically numbered paragraphs of uncontroverted facts asserted in U.S. Bank's summary judgment motion.

In August 2012, Appellants filed a response to U.S. Bank's amended petition that included, *inter alia*, Appellants' claim. At a hearing on September 14, 2012, the trial court sustained Branson's motion to require Appellants to make their claims more definite and certain, granted Appellants "20 days . . . to file sufficient facts[,]" and took U.S. Bank's summary judgment motion under advisement.

On September 19, 2012, the trial court entered U.S. Bank's interlocutory judgment that, in addition to making the decrees already summarized, found that "Coverdell's claims to property south of the base of the Peninsula, as that phrase has been used by the parties, is derived from a *quit claim* deed from W.F. Hoke and Vera Hoke to [Tori]" that set "out a legal description for more property than the Hokes received from [their predecessors in title]; approximately twenty seven acres more." The subsequent deed from Tori to Coverdell was found to "also [describe] more property than [Tori] could have held title to." The trial court also found that Appellants failed to file a response to U.S. Bank's summary judgment motion that complied with Rule 74.04. U.S. Bank's interlocutory judgment did not dispose of all claims in the case, and it was not designated as final even in regard to the claims it did address.

10

On October 3, 2012, Appellants filed an "**<u>AMENDED CLAIM AGAINST PLAINTIFF AND OTHER DEFENDANTS TO QUIET TITLE AND ADVERSE POSSESSION</u>**" that added new factual allegations to Appellants' claim, but retained Properties A and B as the disputed properties. At the end of October 2012, Branson moved for summary judgment on its cross-claim, specifically seeking to quiet title in itself as to Lot 1 and in Empire as to Lots 2 and 6, along with a judgment in Branson's favor on Appellants' claim. Branson also filed a statement of specifically numbered uncontroverted facts, along with suggestions supporting its motion.

On November 21, 2012, Arvest filed its motion for summary judgment on Count I of its amended petition concerning Lots 1 and 6, a statement of uncontroverted facts, and supporting suggestions. HCW Entities joined in this motion.

On January 17, 2013, Coverdell filed motions to strike, or, alternatively, that he be granted additional time to respond to the motions for summary judgment. On this same date, Coverdell moved to set aside U.S. Bank's interlocutory judgment, or, alternatively, to be granted additional time for conducting discovery and preparing a response to U.S. Bank's summary judgment motion. On June 14, 2013, Coverdell filed a similar motion that sought yet more time to respond to the summary judgment motions. That same day, Coverdell also moved to dismiss "the 2011 Case in its entirety, including all parties and claims," based upon "the doctrine of mootness[.]" Coverdell argued that "the parties, issues and subject matter are identical in the 2003 and 2011 Cases and the 2003 Case has already been fully resolved by virtue of the May 29, 2013 hearing and the Orders subsequently entered, making any subsequent ruling by this Court unnecessary, ineffectual and duplicative[.]"

On June 21, 2013, Coverdell filed responses to the summary judgment motions that included responses to the uncontroverted facts set forth in those motions. During a hearing that took place that same day, the trial court heard argument from the parties concerning U.S. Bank's motion to certify its interlocutory judgment as final, the motions for summary judgment filed by Branson and Arvest, and Coverdell's assertion that "[p]art of" the property he claimed had been acquired by the Hokes through adverse possession. U.S. Bank's judgment certifying its interlocutory judgment as final was entered by the trial court later that day, and Appellants timely filed separate notices of appeal.

Thereafter, Branson's and Arvest's judgments were also entered, and they contained the decrees as described above. Appellants timely filed separate notices of appeal as to these additional judgments.

**Analysis**

*CEI's Point on Appeal*

CEI's sole point contends that "any judgment" in the 2011 case favoring Respondents was "void" because "the trial court lacked authority and jurisdiction to decide this matter in that Empire, Branson, HCW, U.S. Bank and Arvest lacked standing as parties in this case[.]" The point is nearly identical to the one it presented in its appeal of the 2003 case. Except for record citations, CEI's argument supporting its point in this appeal is also essentially the same as its argument in the 2003 case appeal, including its attempt to incorporate Coverdell's arguments. The similarity extends even to a description of "the instant case" as one where "both Branson and Empire dismissed their claims after evidence had been introduced at trial and without seeking leave of court."[14] We deny CEI's point here for the

---

[14] There was no trial in the 2011 case. As support for its latter assertion, CEI refers to purported dismissals filed by Branson and Empire in the 2003 case; no such dismissals were filed in the instant case.

same reason it was denied in ***Empire II*** -- the supporting argument fails to present an understandable explanation of or test for standing supported by citations to authority that are linked to claimed deficiencies on the part of Respondents.[15]  ***Id.*** at 29-30.

*A Summary Disposition of Four of Coverdell's Points on Appeal*
*Based on Our Analysis of Similar Arguments Addressed in **Empire II***

Coverdell presents six points.[16]  Points I and II contend the trial court erred in granting summary judgments in favor of U.S. Bank and Arvest as the Lienholders had "no interest . . . sufficient to permit [them] to bring a quiet title action under [section] 527.150." In the 2003 case, Coverdell unsuccessfully challenged standing by Lienholders via an appellate motion that attacked the sufficiency of Lienholders' own interests and ineffectively lumped them in with Empire and Branson.  ***Empire II*** at 30-37.  His standing challenges against Lienholders are brought in a different manner here.  In this appeal, the challenge is presented in a point relied on (Point I as to U.S. Bank and Point II as to Arvest), and both points assert a theory applicable solely to Lienholders -- that a lien against land is not a sufficient interest for a quiet title action under section 527.150.  Despite this procedural improvement, the underlying nature of Lienholders' claims in both cases is the same, and our analysis of standing for purposes of section 527.150.1 also remains the same.  For the

---

[15] There are multiple motions before us to dismiss CEI's appeal based upon violations of Rules 81.12 and 84.04(c) and an allegation that CEI is not an aggrieved party under section 512.020.  However meritorious these motions might be, we may efficiently analyze CEI's point given that it parallels a point we have already decided in the related appeal.  Therefore, in the interest of judicial economy, we deny these motions as moot rather then embark upon an extended analysis of issues related to the legal file and CEI's briefing.  *Cf.* ***Estate of Bernskoetter***, 693 S.W.2d 249, 251 (Mo. App. W.D. 1985) (in the interest of judicial economy, the court decided the appeal on the merits rather than procedural error).  All rule references are to Missouri Court Rules (2015).  All statutory references are to RSMo 2000.

[16] There are also multiple motions to dismiss Coverdell's appeal based upon violations of Rules 81.12 and 84.04(c) and (d).  We exercise our discretion against dismissing Coverdell's appeal based upon the errors asserted in these motions as we do not find that the problems related to these rule violations impair our ability to ascertain the errors asserted by Coverdell.  *Cf.* ***Comp & Soft, Inc. v. AT & T Corp.***, 252 S.W.3d 189, 194 (Mo. App. E.D. 2008) (despite shortcomings in the brief, the court could "ascertain the gist" of the appellant's arguments and the court prefers to reach the merits when possible).  That being said, we do note that significant failures by Coverdell to comply with the requirements of Rule 81.12, contributed significantly to our denial of Point VI, *infra*.

reasons set forth in *Empire II*, we also hold here that section 527.150.1 permits a party claiming an interest in real property based upon a deed of trust to institute an action under section 527.150.1 against another party who also claims an interest in the real property.[17] *Id.* at 31-37. Points I and II are denied.

Points IV and V assert the trial court erred in dismissing Coverdell's adverse possession claim (on two separate occasions) because he had sufficiently pleaded such a claim. Coverdell successfully asserted a similar theory in *Empire II*, but we do not review the merits of the similar points brought here because they are rendered moot by our partial grant of Coverdell's Point III, *infra*. For ease of analysis, we will address that particular point after we take up Coverdell's sixth point.

*Point VI – Indispensable Party*

Coverdell's sixth point contends the trial court did not have authority to enter the summary judgments because it denied an "indispensable party's express attempt to intervene." Some of the briefing on this point is similar to that presented in support of Coverdell's comparable point in *Empire II* that claimed the trial court lacked authority to decide the case when it denied intervention to an indispensable party. Once again, the point brought here fails to specify the alleged indispensable party. In *Empire II*, Coverdell argued that Branson Label had received "'a deed to the subject property'" before 1993, but he did not contend that Branson Label had any present claim to the subject property. *Id.* at 42. A new twist added to his argument in this appeal is that the trial court was "expressly requested to permit Branson Label's intervention and under a mandatory duty to order that it be made a party by the Rules, [but] no such action was taken by the trial court."

---

[17] As in *Empire II*, Coverdell also argued that Rule 52.01 had not been satisfied. As in that case, we do not review the specific requirements of this rule because the argument was not included in a point relied on. *Id.* at 30.

14

Arvest and Empire respond that the point is not preserved because the notice of appeal did not include an order denying Branson Label the opportunity to intervene. Indeed, Coverdell cites no such order in his brief. Coverdell replies that "the absence of a necessary and indispensable party on appeal . . . . is jurisdictional. It may be raised at any time." In addition to our skepticism about this claim in light of our supreme court's more recent view of what is beyond a trial court's "jurisdiction," *see J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 251-54 (Mo. banc 2009), the authority Coverdell cites as supporting this claim, *Brown v. Greene Cnty., Mo.*, 677 S.W.2d 432 (Mo. App. S.D. 1984), is inapposite. *Brown* stated that the "*failure to state a claim* is jurisdictional . . . [and] . . . may be raised for the first time on appeal[.]" *Id.* at 433-34 (emphasis added).[18]

But all of these arguments fail to address the more basic, underlying problem: Coverdell's failure to include material in the record on appeal demonstrating Branson Label's effort to intervene. Coverdell cites a "MOTION" purportedly filed by Mr. Rea, *pro se*, on March 9, 2012 as "an American and an Individual Missourian and a Taney [Countian] and a Taxpayer o[f] Branson, Missouri[.]"[19] Coverdell also represents that "Branson Label's claim to title to the subject property" is shown by two lawsuits documented in Coverdell's

---

[18] *Cf. A.D.D. v. PLE Enters., Inc.*, 412 S.W.3d 270, 277 (Mo. App. W.D. 2013) ("after *J.C.W. ex rel. Webb*, moving to set aside a default judgment for failure to state a claim does not raise an issue of the circuit court's subject matter jurisdiction").

[19] The purported motion states that its purpose is to cause the trial court "to understand that the real property known as Branson Landing is indeed owned in part by this individual Movant." He goes on to add that "as the owkr [sic] of lands known as the Branson Landing, and Lands once owned by [Branson Label] and Lillian E. Clmpton, [sic]" he "does indeed deny that [Lienholders], Empire, and Branson do not own the Landing, [sic] nor [HCW Development], and only [Appellants have] superior interest over [Lienholders], and indeed and particularly over Branson, TaneyCounty [sic], [Empire,] and a joint interest by [a]greement with this Movant." It goes on to state that Empire does not own part of the Branson Landing owned by Branson Label according to a 1995 judgment and that "[a]ll of [the Compton] Farm that was not submerged by the waters of Lake Taneycomo . . . is now owned by [Branson Label]/Coverdells etc." The purported motion states that if Mr. Rea is not a party, he should be permitted to intervene and that Community Bank and "Husch Blackwell" should be added as parties. It does not explain any relationship between Mr. Rea and Branson Label. The prayer seeks "leave to amend all of the pleadings filed in this cause and to add additional parties[,]" but it does not specifically request that Branson Label be made a party.

15

appendix. The referenced appendix contains purported copies of a complaint filed on behalf of Branson Label against Branson, Empire, and the HCW Entities in the United States District Court for the Western District of Missouri on May 13, 2014, plus a complaint filed in the same court the next day on behalf of Branson Label against seven companies not parties to the instant case.[20]

As Branson and U.S. Bank point out, the copies of the materials Coverdell relies on are not in the legal file. The docket entry included in the record that concerns Mr. Rea's March 2012 motion simply notes without further detail that it was filed.[21] And, as would be expected, the docket entries include nothing about lawsuits filed in federal court approximately nine months after the summary judgments were entered. Coverdell's reply brief fails to cite the legal file for any other material in the record documenting an effort by Branson Label to intervene or a current claim by it to the property at issue.

Rule 84.04(h) provides that in addition to particular matters specified in subsections (1)-(3), "[a]n appendix also may set forth matters pertinent to the issues discussed in the brief such as copies of exhibits, excerpts from the written record, and copies of new cases or other pertinent authorities." It does not provide that documents not a part of the record on appeal (apart from applicable legal authority) may be included in the appendix. "The mere inclusion of documents in an appendix to a brief does not make them part of the record on appeal." *J & M Sec., LLC v. Brown*, 388 S.W.3d 566, 570-71 (Mo. App. E.D. 2012). Rule 81.12(a) provides that "[t]he record on appeal shall contain all of the record, proceedings

---

[20] In support of Point VI, Coverdell does not argue any significance to Branson Label being included in the description provided for "John Doe and Jane Doe" as possible defendants.

[21] Two other docket entries reference "A Derivative Action by [Mr.] Rea, A Shareholder of [Branson Label] and Branson Paper Inc. and [Tori]," as being filed on two separate dates in April 2012, but these pleadings are not included in the legal file. No other docket entries were found referencing Branson Label. According to additional docket entries, Mr. Rea filed various other pleadings and correspondence before the trial court, but copies of such materials are not identified in the table of contents for the legal file, and Coverdell does not refer to them in either Point VI or the argument that follows it.

16

and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." The legal file is to "contain clearly reproduced exact copies of the pleadings and other portions of the trial record previously reduced to written form." Rule 81.12(a). Further, it is the duty of the appellant to prepare the legal file by ordering the necessary documents from the clerk, copies of which are then certified by the clerk of the trial court. Rule 81.12(c). We do not consider materials that are not a part of the record.[22] *J & M Sec.*, 388 S.W.3d at 571.

As a result of the omission, Coverdell fails to even demonstrate that "Branson Label's intervention" was sought, much less that Branson Label was a necessary party. Based upon the same reasoning articulated in *Empire II* at 42-43, we cannot find on this record that Branson Landing is an indispensable party under Rule 52.04(b). Coverdell's Point VI is denied.

*Point III – Abatement Doctrine*

Coverdell contends in his third point that

the trial court erred in denying Coverdell's timely filed motion to dismiss because this action was duplicative of and later filed than the 2003 case . . . in that Rule 55.27(a)(9) requires a trial court to dismiss an action where there is a previously filed action involving the same parties and the same res.

The argument that follows the point, however, broadens what options Coverdell asserts were available to the trial court under such circumstances, maintaining that it "was required to dismiss, consolidate or stay further proceedings until the [2003 case] was fully and finally resolved."

---

[22] Even if Mr. Rea's motion was included in the record, Empire and HCW Entities are correct that the document included in the appendix does not demonstrate that Branson Label actually attempted to intervene or that anyone specifically asked for leave to bring it into the lawsuit. And, as HCW Entities and U.S. Bank point out, the lawsuits purportedly filed elsewhere after the summary judgments in this case were entered do nothing to establish that relevant claims by Branson Label were timely presented to the trial court. *Cf. Ozark Mountain Timber Prods., Inc. v. Redus*, 725 S.W.2d 640, 645 (Mo. App. S.D. 1987) (the trial court will not be convicted of error on an issue it was not asked to decide).

17

"The granting or refusing of a stay of proceedings rests in the trial court's discretion, the exercise of which will not be disturbed on appeal unless clearly abused." *Green v. Miller*, 851 S.W.2d 553, 556 (Mo. App. W.D. 1993). "Stay of proceedings is not a matter of right but involves the exercise of some discretion by the trial court as to granting and as to duration; but it would be an abuse of discretion to refuse a stay properly required by the circumstances." *State ex rel. Great Am. Ins. Co. v. Jones*, 396 S.W.2d 601, 605 (Mo. banc 1965). Our review of the denial of a motion to dismiss, "as part of the appeal from a final judgment[,]" is also for abuse of discretion. *In re O.J.B.*, 436 S.W.3d 726, 729 (Mo. App. W.D. 2014).

We don't blame Coverdell for hedging a bit in his brief on the appropriate relief available on this "previously filed action" claim because the existing case law on the subject is not exactly a model of clarity and consistency, as illustrated by the following selection of statements from a few of those cases. "Abatement, also known as the 'pending action doctrine,' holds that where a claim involves the same subject matter and parties as a previously filed action so that the same facts and issues are presented, resolution should occur through the prior action and the second suit should be dismissed." *HTH Cos., Inc. v. Mo. Dept. of Labor & Indus. Relations*, 154 S.W.3d 358, 361 (Mo. App. E.D. 2004). The "pendency of a prior action is not ground for dismissal with prejudice, but ground only to stay or abate the later action." *Hubbard v. Mercantile Bank of Kansas City*, 773 S.W.2d 517, 519 (Mo. App. W.D. 1989) (footnote omitted).

In *Hubbard*, the western district of this court did not actually reach the question of whether the case "should be stayed or abated[,]" *id.* at 519; it simply reversed what was deemed a dismissal with prejudice in light of another pending suit. *Id.* at 518-19.

Nonetheless, we find its following discussion on abatement persuasive: "A plea in abatement is essentially a request, not that an action be terminated, but that it be continued until such time as there has been a disposition of the first action or that allowance of this defense be equivalent to a dismissal without prejudice of the abated action." *Id.* at 519 n.1; *Cf. Ryan v. Campbell Sixty-Six. Express*, 276 S.W.2d 128, 130-31(Mo. banc 1955) (generally, it is proper to "dismiss a second suit where a prior suit is pending in another court involving the same parties and the same subject matter[,]" but there are exceptions, and it was not an abuse of discretion to stay an initial suit pending the resolution of a second case involving the same dispute filed in another county); *Brink*, 217 S.W.2d at 510 (the prevailing rule in Missouri is that "[w]here two actions are pending, and a decision in the prior one will adequately determine the rights of the parties, the second action may be stayed until the first is determined") (internal quotation omitted). In the appropriate case, a stay may effectively serve abatement's "twin goals of avoiding wasteful duplication and inconsistent judgments." *Kelly v. Kelly*, 245 S.W.3d 308, 314 (Mo. App. W.D. 2008).

Respondents lodge several waiver arguments against Point III that are ineffective. HCW Entities maintain that "Coverdell did not assert the pending action in his responsive pleading, waiting until he obtained an adverse ruling before seeking to stay the [instant case]." Arvest, U.S. Bank, Branson, and Empire argue that the motion Coverdell relies on in his brief should not be considered on appeal because it was not filed and presented to the trial court. Empire further argues that Coverdell waived any argument that he was entitled to relief based on Rule 55.27(a)(9) because Appellants' first and second dismissal motions

19

did not seek dismissal under this rule; it simply sought dismissal for lack of standing and a stay based on the existence of the 2003 case.[23]

As previously discussed, we do not consider material that is not included in the record on appeal. *J & M Sec.*, 388 S.W.3d at 571. The citation in Coverdell's brief to the motion to dismiss he relies on is to the "**MOTION TO DISMISS**" set forth in the appendix to Coverdell's brief, and the appendix index suggests that the purported pleading was filed on February 22, 2013, but there is no citation to the legal file, and the motion does not appear in the table of contents for the voluminous legal file.[24] While Coverdell adds confusion to an already complicated legal record by failing to include in the legal file a file-stamped copy of the pleading he relies on in his brief (if in fact such a pleading was filed), we do not agree that the abatement issue was not presented to the trial court.

Appellants' first and second dismissal motions asserted that the instant case should not go forward because these same issues were being litigated in the 2003 case. It was not necessary for these motions to expressly rely on Rule 55.27(a)(9) in order to present the abatement issue to the trial court. *Cf.* ***Blue Ridge Bank & Trust Co. v. Hart***, 152 S.W.3d 420, 425 (Mo. App. W.D. 2005) ("[r]efusing to consider the allegations of a motion solely because the motion fails to cite the specific rule under which it is authorized, however, exalts form over substance").

---

[23] Respondents do not challenge the timeliness of Appellants' motion, and it does not appear that U.S. Bank raised timeliness in its response to Appellants' motion. *Cf.* ***Kelly***, 245 S.W.3d at 314 (suggesting that the abatement doctrine may be addressed by a court *sua sponte*, especially since a trial court has discretionary power to stay a matter because another action is pending).

[24] Further, a pleading filed by the attorney identified in the purported pleading at or near the time referenced in its certificate of service is not specifically referenced in the docket entries. The purported pleading shows a signature by one of Coverdell's attorneys, Robert Cockerham. The closest docket entry suggesting any similarity to the pleading in Coverdell's appendix is a docket entry from February 25, 2013 reflecting the filing of a "Motion to Dismiss" but it is stated as being filed by another lawyer, Charles S. Genisio. However, "**U.S. BANK'S SUGGESTIONS IN OPPOSITION TO [COVERDELL'S and CEI'S] MOTIONS TO DISMISS**" filed on February 28, 2013 is in the legal file and it states that Appellants "separately argue, in nearly identical motions, that the doctrine abatement [sic] requires the dismissal of the entire 2011 [c]ase . . . on the basis that the earlier filed 2003 [c]ase . . . involves . . . many of the same parties and claims."

20

Respondents also argue that abatement simply does not apply because the parties in the two suits are different -- HCW Entities are not parties to the 2003 case. Branson quotes the statement in *Kelly*, 245 S.W.3d at 314, that "[t]he abatement doctrine technically does not apply unless the issues are the same, and the alignment and identity of the parties is identical[,]" but Branson overlooks the case's comparison to *State ex rel. City of Springfield v. Conley*, 760 S.W.2d 948, 950 (Mo. App. W.D. 1988), suggesting that the rule is flexible enough to apply in some cases where the parties are reversed. *Id.* Indeed, as our high court has noted, "abatement is manifestly appropriate even though the parties are reversed in the situation in which the second cause of action is essentially identical to the first action filed." *State ex rel. J.E. Dunn, Jr. & Assocs., Inc. v. Schoenlaub*, 668 S.W.2d 72, 75 (Mo. banc 1984). Moreover, "[e]xtraneous parties to the action do not preclude dismissal when determining if there is sufficient commonality to warrant abatement." *State ex rel. Dunger v. Mummert*, 871 S.W.2d 609, 610 (Mo. App. E.D. 1994).

Another argument made in opposition to Coverdell's Point III is that abatement does not apply because the subject matter of the two cases is not identical. One argument in this vein is an insistence that "the pleadings of the 2003 case did not involve land at issue in the [instant] case until being amended *after* the [instant] case was filed[.]" This position ignores the claims Appellants had asserted before the 2010 judgment that they had title in fee simple absolute to the "disputed" property and that their broad legal description in the deed to Tori was already a part of the 2003 case when it was first appealed in *Empire I*, 344 S.W.3d at 848. Indeed, while we found in *Empire I* that Appellants' counsel had made judicial admissions at trial that were inconsistent with the 2010 judgment, we did not prohibit

21

Appellants from going forward on its claims to the "disputed" property in the 2003 case. *Id.* at 852 and 853.

U.S. Bank insists in its brief that the instant case "was filed by [Lienholders] to protect their fee interest in the *entirety* of the Branson Landing Retail Property[,]" and the summary judgment in its favor in the 2003 case only addressed part of that land. Similarly, Branson argues that "[i]t may be the case that [Appellants] claimed the same property in both cases, but [Lienholders] claimed more and different property [in the instant case] than was at issue [in the 2003 case]." Thus, the argument is that the two cases may overlap, but the claims in them do not absolutely mirror one another.

The overlap is significant, and identical claims are made in the 2003 and in this case. For instance, in this case, U.S. Bank sought to quiet title in Branson and Empire as to Lots 1, 3, 4 and 6 and to obtain a declaration of the validity of its deed of trust securing the $90,000,000 debt. In the 2003 case, U.S. Bank's motion to intervene referenced the $90 million debt, and its counterclaim and cross-claim also sought to quiet title in Branson and Empire as to Lots 1, 3, 4, and 6, with its own deed of trust declared valid. In both cases, U.S. Bank sought a declaration that Appellants have no rights to "*any part* of Lots 1, 3, 4 or 6[.]" (Emphasis added.) In both cases, Coverdell claimed ownership of Properties A and B by adverse possession.

"In order for the abatement doctrine to apply, the object, purpose and principles of law raised in the two actions must be the same." **Meyer v. Meyer**, 21 S.W.3d 886, 890 (Mo. App. E.D. 2000) (where it was held that an action for declaratory judgment filed by brothers in circuit court was sufficiently similar to a petition to take against a will filed by the surviving spouse in the probate division). However, abatement may apply to the duplicated

22

claims even if all claims in the two cases do not match. *See* **State ex rel. City of Springfield, Through Bd. of Pub. Utils. v. Conley**, 760 S.W.2d 948, 951 (Mo. App. W.D. 1988) (in which a writ of prohibition directed that no further action be taken regarding a counterclaim that sought "a parallel adjudication of a question already in litigation in" a suit between the same parties in a different county).

Empire optimistically argues that "[w]ith final judgments having been entered in both the 2003 case and the [instant] case, the risk of any 'unseemly clashes[,]' [**State ex rel. Coffield v. Buckner**, 200 S.W. 94, 96 (Mo. App. K.C.D. 1917),] is moot." Yet, even while the legal descriptions relied on by Appellants and the other parties in both cases make identifying the exact ground they are referring to like comparing apples to oranges, there was nonetheless significant overlap in claims asserted in the two cases. Added to that is the significant clash that now exists between the summary judgments here decreeing that Appellants have no rights or interest in Lots 1, 2 and 6 or parts of Lots 1, 2, 3, 4, and 6 including Retail Tract, Northwest Tracts, Western Peninsula, Eastern Peninsula, Park Addition, and Branson Town, and the judgments in **Empire II** denying Coverdell any right or interest in parts of Lots 1, 2, 3, 4, and 6 known as Retail North (appearing to be part of Retail Tract), Northwest Tracts, Western Peninsula, Eastern Peninsula, Park Addition, and Branson Town that are now reversed. *Id.* at 5 and 24-26.

We therefore grant Coverdell's Point III to the extent that it asserts the trial court erred in refusing to enter a stay in the instant case. The summary judgments are reversed, and the trial court is directed to stay any further action in this case pending a final resolution of the 2003 case.

DON E. BURRELL, J. - OPINION AUTHOR
MARY W. SHEFFIELD, P.J., GARY W. LYNCH, J. - CONCURS

23

# The Appendix

## Retail Tract

### EXHIBIT A
#### Retail Property Description

Lots 1, 3 and 4, BRANSON LANDING, a subdivision as per the recorded plat thereof, Plat Book/Slide G, pages 767-770, of the Taney County Recorder's Office, City of Branson, Taney County, Missouri.

ALSO, a part of Lot 6, BRANSON LANDING, a subdivision as per the recorded plat thereof, Plat Book/Slide G, pages 767-770, of the Taney County Recorder's Office, City of Branson, Taney County, Missouri, being more particularly described as follows:

1) (B-1) Beginning at the Southwest corner of said Lot 6; thence North 26° 46' 18" West along the Westerly line of said Lot 6, 203.35 feet; thence North 74° 49' 13" East 23.01 feet; thence South 15° 10' 47" East 105.00 feet; thence South 60° 10' 47" East 84.85 feet; thence South 15° 10' 47' East 38.20 feet to a point on the South line of said Lot 6; thence South 80° 13' 42" West along South line 42.33 feet to the point of beginning; containing 0.10 acres, more or less; and

2) (B-2) Commencing at the Southwest corner of said Lot 6; thence North 26° 46' 18" West along the Westerly line of said Lot 6, 231.69 feet to the POINT OF BEGINNING; thence continuing North 26° 46' 18" West along Westerly line 146.91 feet; thence North 20° 45' 18" West along Westerly line 93.53 feet; thence North 67° 24' 07" East 61.25 feet; thence South 22° 35' 53" East 240.00 feet; thence South 67° 24' 07" West 53.56 feet to the point of beginning, containing 0.33 acres, more or less.

Together with those appurtenant easements as set forth in the Branson Landing Agreement Regarding Ratification, Confirmation and Acknowledgement, as recorded in Book 500, pages 2591-2601.

Together with those appurtenant easements as set forth in the Amendment, Severance and Ratification of Master Lease Agreement dated November 1, 2006, as recorded in Book 504, pages 5100.

LESS AND EXCEPT THE FOLLOWING TRACTS:

1) (Boutique Hotel Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 718.90and 743.65, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 28°32'51" West a distance of 366.41 feet to the Point of Beginning; Thence South 02°39'39" East a distance of 31.86 feet; Thence North 87°20'21" East a distance of 6.69 feet; Thence South 02°39'54" East a distance of 1.94 feet; Thence North 87°20'22" East a distance of

5.00 feet; Thence South 02°39'42" East a distance of 13.58 feet; Thence South 87°20'22" West a distance of 4.50 feet; Thence North 02°39'42" West a distance of 2.00 feet; Thence South 87°20'22" West a distance of 7.92 feet; Thence South 02°39'38" East a distance of 2.00 feet; Thence South 87°20'22" West a distance of 9.75 feet; Thence South 02°39'38" East a distance of 168.00 feet; Thence North 87°20'22" East a distance of 5.21 feet; Thence South 09°47'09" East a distance of 16.37 feet; Thence South 80°12'50" West a distance of 90.33 feet; Thence North 09°47'10" West a distance of 36.94 feet; Thence North 80°12'50" East a distance of 6.05 feet; Thence North 09°47'10" West a distance of 14.73 feet; Thence North 80°12'50" East a distance of 38.08 feet; Thence North 02°39'38" West a distance of 7.29 feet; Thence North 80°12'50" East a distance of 6.19 feet; Thence North 02°39'38" West a distance of 14.86 feet; Thence South 87°20'22" West a distance of 51.76 feet; Thence North 02°39'38" West a distance of 38.79 feet; Thence North 87°20'22" East a distance of 51.76 feet; Thence North 02°39'38" West a distance of 15.11 feet; Thence North 85°32'09" West a distance of 6.19 feet; Thence North 02°39'39" West a distance of 7.73 feet; Thence North 85°32'09" West a distance of 42.58 feet; Thence North 10°03'02" West a distance of 54.12 feet; Thence South 79°56'58" West a distance of 2.67 feet; Thence North 09°47'10" West a distance of 12.83 feet; Thence North 80°12'50" East a distance of 10.92 feet; Thence North 09°47'10" West a distance of 7.21 feet; Thence North 73°52'12" East a distance of 87.55 feet; Thence North 02°39'39" West a distance of 0.50 feet; Thence North 87°20'21" East a distance of 13.87 feet to the said Point of Beginning, Containing 0.43 acres of land, more or less.

2) (Boutique Hotel Below Condominium Units Building.3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 723.65 and 739.53, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 26°28'59" West a distance of 432.64 feet to the Point of Beginning; Thence North 87°20'22" East a distance of 9.75 feet; Thence South 02°39'38" East a distance of 158.46 feet; Thence North 87°20'25" East a distance of 12.26 feet; Thence South 09°41'54" East a distance of 6.72 feet; Thence North 87°35'35" East a distance of 11.48 feet; Thence South 09°47'10" East a distance of 67.42 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence South 09°47'10" East a distance of 26.40 feet; Thence South 80°12'50" West a distance of 85.48 feet; Thence North 09°47'10" West a distance of 25.34 feet; Thence South 80°12'50" West a distance of 5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a

distance of 33.08 feet; Thence North 80°12'50" East a distance of 91.00 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 5.21 feet; Thence North 02°39'38" West a distance of 168.00 feet to the said Point of Beginning, Containing 0.25 acres of land, more or less;

AND, That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 720.54 and 739.53, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 23°51'18" West a distance of 422.29 feet to the Point of Beginning; Thence South 02°39'42" East a distance of 34.97 feet; Thence North 87°20'18" East a distance of 12.50 feet; Thence South 02°39'42" East a distance of 20.00 feet; Thence South 87°20'18" West a distance of 11.17 feet; Thence North 02°39'42" West a distance of 15.50 feet; Thence South 87°20'25" West a distance of 5.83 feet; Thence North 02°39'42" West a distance of 39.48 feet; Thence North 87°20'22" East a distance of 4.50 feet to the said Point of Beginning, Containing 0.01 acres of land, more or less.

3) (Lower Level Boutique Hotel Property Buildings 2 and 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 709.61 and 723.11 based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°19'58" West a distance of 570.97 feet to the Point of Beginning; Thence South 09°47'10" East a distance of 43.22 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence South 09°47'10" East a distance of 49.53 feet; Thence North 80°12'50" East a distance of 0.87 feet; Thence South 09°47'10" East a distance of 102.86 feet; Thence North 80°16'20" East a distance of 10.25 feet; Thence South 09°43'40" East a distance of 47.58 feet; Thence North 80°16'20" East a distance of 0.56 feet; Thence South 09°43'40" East a distance of 22.45 feet; Thence South 73°08'49" West a distance of 45.64 feet; Thence North 16°51'12" West a distance of 3.33 feet; Thence North 03°46'09" East a distance of 20.96 feet; Thence North 09°43'40" West a distance of 77.00 feet; Thence North 80°16'43" East a distance of 19.50 feet; Thence North 09°47'10" West a distance of 77.86 feet; Thence South 80°12'50" West a distance of 75.87 feet; Thence North 09°47'10" West a distance of 24.28 feet; Thence South 80°12'50" West a distance of

26

5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 8.33 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 21.92 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 2.83 feet; Thence North 80°12'50" East a distance of 91.00 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 4.54 feet; Thence North 02°39'35" West a distance of 2.89 feet; Thence North 87°27'35" East a distance of 33.65 feet to the said Point of Beginning, Containing 0.29 acres of land, more or less.

4) (Area below Retail space in Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 709.61 and 720.02 based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°19'58" West a distance of 570.97 feet; Thence South 09°47'10" East a distance of 43.22 feet to the Point of Beginning; Thence continuing South 09°47'10" East a distance of 49.53 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence North 09°47'10" West a distance of 49.53 feet; Thence North 80°12'50" East a distance of 29.43 feet to the said Point of Beginning, Containing 0.09 acres of land, more or less, 1,457 square feet of land, more or less.

5) (Boutique Units Above Second Floor of Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 751.77 and 782.95, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°24'47" West a distance of 439.54 feet to the Point of Beginning; Thence South 02°39'35" East a distance of 13.00 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'38" East a distance of 16.00 feet; Thence South 87°20'25" West a distance of 5.12 feet; Thence South 02°39'35" East a distance of 27.00 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'38" East a distance of 16.00 feet; Thence South 87°20'25" West a distance of 5.12 feet; Thence South 02°39'35" East a distance of 24.83 feet; Thence North 87°20'25" East a distance of

5.12 feet; Thence South 02°39'38" East a distance of 31.19 feet; Thence South 87°20'22" West a distance of 16.14 feet; Thence South 09°47'10" East a distance of 88.09 feet; Thence South 80°12'50" West a distance of 31.33 feet; Thence North 09°47'10" West a distance of 0.67 feet; Thence South 80°12'50" West a distance of 112.00 feet; Thence North 09°47'10" West a distance of 25.34 feet; Thence South 80°12'50" West a distance of 5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence North 80°12'50" East a distance of 5.33 feet; Thence North 09°47'10" West a distance of 20.67 feet; Thence North 80°12'50" East a distance of 28.92 feet; Thence North 09°47'10" West a distance of 4.59 feet; Thence North 80°12'50" East a distance of 15.13 feet; Thence South 09°47'10" East a distance of 4.83 feet; Thence North 80°12'50" East a distance of 13.12 feet; Thence North 09°47'10" West a distance of 4.83 feet; Thence North 80°12'50" East a distance of 28.51 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 4.54 feet; Thence North 02°39'35" West a distance of 31.02 feet; Thence North 87°20'25" East a distance of 4.50 feet; Thence North 02°39'35" West a distance of 12.00 feet; Thence South 87°20'25" West a distance of 5.17 feet; Thence North 02°39'35" West a distance of 14.67 feet; Thence North 87°20'25" East a distance of 0.67 feet; Thence North 02°39'35" West a distance of 27.67 feet; Thence South 87°20'25" West a distance of 0.67 feet; Thence North 02°39'35" West a distance of 14.67 feet; Thence North 87°20'25" East a distance of 0.67 feet; Thence North 02°39'35" West a distance of 28.50 feet; Thence North 87°20'25" East a distance of 23.00 feet; Thence North 02°39'35" West a distance of 4.33 feet; Thence North 87°20'25" East a distance of 19.96 feet; Thence South 02°39'35" East a distance of 4.83 feet; Thence North 87°20'25" East a distance of 30.71 feet to the said Point of Beginning, Containing 0.50 acres of land, more or less.

6) (HCW North 1) A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Commencing at the West Common Corner of Lots 2 and 6 of said Branson Landing, said point being on the Easterly line of said Lot 1; thence North 17° 51' 25" West along the Easterly line of Lot 1, 124.88 feet, to the POINT OF BEGINNING; thence Southwesterly along a segment of a curve to the left having an arc length of 143.97 feet (said curve having a chord bearing and distance of South 53° 56' 47" West 142.38 feet and a radius of 423.51 feet); thence Westerly along a curve to the right having an arc length of 312.42 feet (said curve having a chord bearing and distance of South 59° 35' 10" West 308.69 feet and a radius of 582.00 feet); thence Southwesterly along a curve to the left having an arc length of 112.34 feet (said curve having a chord bearing and distance of South 62° 11' 37" West 111.41 feet and a radius of 252.00 feet); thence South 49° 25' 21" West 62.41 feet; thence North 85° 34' 39" West 19.45 feet; thence North 40° 34' 39" West 87.00 feet; thence

28

North 49° 25' 21" East 5.00 feet; thence North 40° 34' 39" West 105.18 feet to a point on the Northerly line of said Lot 1, Branson Landing, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along the North line of Lot 1, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek to the West Common Corner of Lots 1 and 2, Branson Landing; thence North 89° 06' 53" East along the common line between said Lots 1 and 2, 30.55 feet; thence North 14° 23' 02" East along common line 162.47 feet; thence South 05° 47' 58" East along common line 346.00 feet; thence South 10° 45' 58" East along common line 258.00 feet; thence South 17° 51' 25" East along common line 32.78 feet to the point of beginning; containing 3.75 acres, more or less.

7) (HCW North 2) A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Beginning at a corner of said Lot 1, being the intersection of the New R/W of Missouri Pacific Railroad and the Easterly R/W of U.S. Business Highway No. 65; thence North 23° 51' 47" West along Easterly R/W 250.40 feet; thence South 85° 20' 18" East along the North line of Lot 1, 107.03 feet; thence Easterly along North line on a spiral curve to the right with a delta of 9.00°, a spiral length of 300.00 feet and a center line of the central circle being a 6.00° curve to the right (said curve having a chord bearing and distance of South 85° 12' 01" East 65.84 feet); thence South 05° 04' 04" West along North line 164.01 feet; thence North 71° 17' 24" East along North line 24.40 feet to a point, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along North line, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek, to a point which bears North 47° 49' 27" East 265.19 feet; thence South 40° 34' 39" East 115.98 feet; thence North 49° 25' 21" East 5.00 feet; thence South 40° 34' 39" East 169.47 feet; thence Southerly along a curve to the left having an arc length of 208.64 feet (said curve having a radius of 1335.00 feet); thence south 32° 31' 02" West 50.59 feet to a point on the Westerly line of said Lot 1 and the Easterly R/W of said Missouri Pacific Railroad; thence Northwesterly along a segment of a curve to the left having an arc length of 324.13 feet (said segment having a chord bearing and distance of North 66° 54' 38" West 322.67 feet and having a radius of 984.93 feet) to P.S.C. Sta 9961+21.6 and 30 feet right; thence Westerly along a spiral curve to the left with a delta of 9.00°, a spiral length of 300.00 feet and the center line of the central circle 6.00° to the left (having a chord bearing and distance of North 82° 11' 25" West 291.85 feet) to the point of beginning; containing 2.51 acres, more or less.

8) Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building

9, known as and being a portion of THE BOARDWALK AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Boardwalk at Branson Landing Condominium as recorded in Book 495, pages 3605-3638, as corrected in Book 495, pages 8477-8483 and amended in Book 499, pages 3020-3026 (collectively, the Declaration), and as platted in Plat Book/Slide I, pages 62-73.

9) Those Condominium Units and Parking Units (both as defined in the Declaration)contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 10, known as and being a part of THE BOARDWALK AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Boardwalk at Branson Landing Condominium as recorded in Book 495, pages 3605-3638, as corrected in Book 495, pages 8477-8483 and amended in Book 499, pages 3020-3026 (collectively, the Declaration), and as platted in Plat Book/Slide I, pages 151-162.

10) Those Condominium Units and Parking Units (both as defined in the Declaration)contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 2, known as and being a part of THE PROMENADE AT BRANSON LANDING CONDOMINIUM, a condominium as created per the Declaration of the Promenade at Branson Landing Condominium as recorded in Book 499, pages 1405-1442 (collectively, the Declaration) and as platted in Plat Book/Slide I, pages 133-139.

11) Those Condominium Units and Parking Units (both as defined in the Declaration)contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 3, known as and being a part of THE PROMENADE AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Promenade at Branson Landing Condominium as recorded in Book 499, pages 1405-1442 (collectively, the Declaration) and as platted in Plat Book/Slide I, pages 140-147.

## Northwest Tracts

A part of Lot 1, BRANSON LANDING; a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Commencing at the West Common Corner of Lots 2 and 6 of said Branson Landing, said point being on the Easterly line of said Lot 1; thence North 17° 51' 25" West along the Easterly line of Lot 1, 124.88 feet, to the POINT OF BEGINNING; thence Southwesterly along a segment of a curve to the left having an arc length of 143.97 feet (said curve having a chord bearing and distance of South 53° 56' 47" West 142.38 feet and a radius of 423.51 feet); thence Westerly along a curve to the right having an arc length of 312.42 feet (said curve having a chord bearing and distance of South 59° 35' 10" West 308.69 feet and a radius of 582.00 feet); thence Southwesterly along a curve to the left having an arc length of 112.34 feet (said curve having a chord bearing and distance of South 62° 11' 37" West 111.41 feet and a radius of 252.00 feet); thence South 49° 25' 21" West 62.41 feet; thence North 85° 34' 39" West 19.45 feet; thence North 40° 34' 39" West 87.00 feet; thence North 49° 25' 21" East 5.00 feet; thence North 40° 34' 39" West 105.18 feet to a point on the Northerly line of said Lot 1, Branson Landing, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along the North line of Lot 1, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek to the West Common Corner of Lots 1 and 2, Branson Landing; thence North 89° 06' 53" East along the common line between said Lots 1 and 2, 30.55 feet; thence North 14° 23' 02" East along common line 162.47 feet; thence South 05° 47' 58" East along common line 346.00 feet; thence South 10° 45' 58" East along common line 258.00 feet; thence South 17° 51' 25" East along common line 32.78 feet to the point of beginning; containing 3.75 acres, more or less; which said exception was reserved for lease to HCW North.

## Northwest Tracts

A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Beginning at the corner of said Lot 1, being the intersection of the New R/W of Missouri Pacific Railroad and the Easterly R/W of U.S. Business Highway No. 65; thence North 23° 51' 47" West along Easterly R/W 250.40 feet; thence South

85° 20' 18" East along the North line of Lot 1, 107.03 feet; thence Easterly along North line on a spiral curve to the right with a delta of 9.00°, a spiral length of 300.00 feet and a center line of the central circle being a 6.00° curve to the right (said curve having a chord bearing and distance of South 85° 12' 01" East 65.84 feet); thence South 05° 04' 04" West along North line 164.01 feet; thence North 71° 17' 24" East along North line 24.40 feet to a point, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along North line, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek, to a point which bears North 47° 49' 27" East 265.19 feet; thence South 40° 34' 39" East 115.98 feet; thence North 49° 25' 21" East 5.00 feet; thence South 40° 34' 39" East 169.47 feet; thence Southerly along a curve to the left having an arc length of 208.64 feet (said curve having a radius of 1335.00 feet); thence south 32° 31' 02" West 50.59 feet to a point on the Westerly line of said Lot 1 and the Easterly R/W of said Missouri Pacific Railroad; thence Northwesterly along a segment of a curve to the left having an arc length of 324.13 feet (said segment having chord bearing and distance of North 66° 54' 38" West 322.67 feet and having a radius of 984.93 feet) to P.S.C. Sta 9961+21.6 and 30 feet right; thence Westerly along a spiral curve to the left with a delta of 9.00°, a spiral length of 300.00 feet and the center line of the central circle 6.00° to the left (having a chord bearing and distance of North 82° 11' 25" West 291.85 feet) to the point of beginning; containing 2.51 acres, more or less.

## Property A

All that part of the SE¼ of the NW¼ situate on the right bank of Roark Creek and that part of the NE¼ of the SW¼ in Section 33, Township 23, Range 21, EXCEPT a tract of land more particularly described as beginning at the NE corner of Park Addition to the City of Branson, Missouri thence North 2° 19' West to the Southerly bank of Roark Creek; thence in a Southerly direction with the Easterly and Southerly bank of said Roark Creek to the Northerly line of said Park Addition, thence Easterly to the point of beginning all hearings being referenced to the centerline of Sycamore Street as being due North and South.

## Property B

A parcel of land situated in the NE ¼ of the SW ¼ and the SE ¼ of the NW ¼ of Section 33, Township 23 North, Range 21 West, City of Branson, Taney County, Missouri, as per general warranty deed and being described as follows:

Commencing at the Northeast corner of Park addition to the City of Branson, Missouri, thence N 02°29'46" W along the established property line (as per survey of E.G. Nightingale, Book 13, Page 16) 27.80 feet to a set rebar being the point of beginning, thence continue N 02°29'46" W 749.81 feet to a reference point on the top bank of the month of Roark Creek, thence continuing N 02°29'46" W to the fluctuating waters edge of Roark Creek, thence easterly and southerly along the fluctuating waters edge of Roark Creek and Lake Taneycomo to a point being S 89°41'34" E of the point of beginning, thence N 89°41'34" W N 89°41'34"W to a set rebar being a reference point on the bank of said Lake Taneycomo, thence N 89°41'34" W 242.06 feet to the point of beginning.

# U.S. Bank's Judgment - Retail Tract

Lots 1, 3 and 4, BRANSON LANDING, a subdivision as per the recorded plat thereof, Plat Book/Slide G, pages 767-770, of the Taney County Recorder's Office, City of Branson, Taney County, Missouri.

ALSO, a part of Lot 6, BRANSON LANDING, a subdivision as per the recorded plat thereof, Plat Book/Slide G, pages 767-770, of the Taney County Recorder's Office, City of Branson, Taney County, Missouri, being more particularly described as follows:

1) (B-1) Beginning at the Southwest corner of said Lot 6; thence North 26° 46' 18" West along the Westerly line of said Lot 6, 203.35 feet; thence North 74° 49' 13" East 23.01 feet; thence South 15° 10' 47" East 105.00 feet; thence South 60° 10' 47" East 84.85 feet; thence South 15° 10' 47" East 38.20 feet to a point on the South line of said Lot 6; thence South 80° 13' 42" West along South line 42.33 feet to the point of beginning; containing 0.10 acres, more or less; and

2) (B-2) Commencing at the Southwest corner of said Lot 6; thence North 26° 46' 18" West along the Westerly line of said Lot 6, 231.69 feet to the POINT OF BEGINNING; thence continuing North 26° 46' 18" West along Westerly line 146.91 feet; thence North 20° 45' 18" West along Westerly line 93.53 feet; thence North 67° 24' 07" East 61.25 feet; thence South 22° 35' 53" East 240.00 feet; thence South 67° 24' 07" West 83.56 feet to the point of beginning, containing 0.33 acres, more or less.

Together with those appurtenant easements as set forth in the Branson Landing Agreement Regarding Ratification, Confirmation and Acknowledgement, as recorded in Book 500, pages 2591-2601.

Together with those appurtenant easements as set forth in the Amendment, Severance and Ratification of Master Lease Agreement dated November 1, 2006, as recorded in Book 504, pages 1540.

LESS AND EXCEPT THE FOLLOWING TRACTS:

1) (Boutique Hotel Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 718.90 and 743.65, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 73°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; thence South 28°32'51" West a distance of 385.41 feet to the Point of Beginning; Thence South 02°39'39" East a distance of 31.86 feet; Thence North 87°20'21" East a distance of 6.69 feet; Thence South 02°39'54" East a distance of 1.94 feet; Thence North 87°20'22" East a distance of

34

5.00 feet; Thence South 02°39'42" East a distance of 13.58 feet; Thence South 87°20'22" West a distance of 4.50 feet; Thence North 02°39'42" West a distance of 2.00 feet; Thence South 87°20'22" West a distance of 7.92 feet; Thence South 02°39'38" East a distance of 2.00 feet; Thence South 87°20'22" West a distance of 9.75 feet; Thence South 02°39'38" East a distance of 168.00 feet; Thence North 87°20'22" East a distance of 5.21 feet; Thence South 09°47'09" East a distance of 16.17 feet; Thence South 80°12'50" West a distance of 90.33 feet; Thence North 09°47'10" West a distance of 36.94 feet; Thence North 80°12'50" East a distance of 6.05 feet; Thence North 09°47'10" West a distance of 16.73 feet; Thence North 80°12'50" East a distance of 36.00 feet; Thence North 02°39'38" West a distance of 7.29 feet; Thence North 80°12'50" East a distance of 6.19 feet; Thence North 02°39'38" West a distance of 14.86 feet; Thence South 87°20'22" West a distance of 51.76 feet; Thence North 02°39'38" West a distance of 38.79 feet; Thence North 87°20'22" East a distance of 51.76 feet; Thence North 02°39'38" West a distance of 15.11 feet; Thence North 85°32'09" West a distance of 6.19 feet; Thence North 02°39'39" West a distance of 7.73 feet; Thence North 85°32'09" West a distance of 42.58 feet; Thence North 10°03'02" West a distance of 54.12 feet; Thence South 79°56'58" West a distance of 2.67 feet; Thence North 09°47'10" West a distance of 12.83 feet; Thence North 80°12'50" East a distance of 10.92 feet; Thence North 09°47'10" West a distance of 7.21 feet; Thence North 73°52'12" East a distance of 87.55 feet; Thence North 02°39'39" West a distance of 0.50 feet; Thence North 87°20'21" East a distance of 13.87 feet to the said Point of Beginning, Containing 0.43 acres of land, more or less.

2) (Boutique Hotel Below Condominium Units Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /slide G, at Pages 767 through 770 of the Taney County Recorder's office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 723.65 and 739.63, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 73°20'35" West a distance of 193.60 feet to the Southwest corner of Lot 6; Thence South 26°28'59" West a distance of 432.64 feet to the Point of Beginning; Thence North 87°20'22" East a distance of 9.75 feet; Thence South 02°39'38" East a distance of 158.46 feet; Thence North 87°20'25" East a distance of 12.26 feet; Thence South 09°41'54" East a distance of 6.72 feet; Thence North 87°35'35" East a distance of 11.48 feet; Thence South 09°47'10" East a distance of 67.42 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence South 09°47'10" East a distance of 26.40 feet; Thence South 80°12'50" West a distance of 85.48 feet; Thence North 09°47'10" West a distance of 25.34 feet; Thence South 80°12'50" West a distance of 7.83 feet; Thence North 09°47'10" West a distance of 0.67 feet; Thence South 80°12'50" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a

distance of 33.08 feet; Thence North 80°12'50" East a distance of 91.00 feet; Thence North 09°47'03" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 5.21 feet; Thence North 02°39'38" West a distance of 168.00 feet to the said Point of Beginning, Containing 0.25 acres of land, more or less;

AND, That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 23, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 720.54 and 739.53, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 23°51'18" West a distance of 422.29 feet to the Point of Beginning; Thence South 02°39'42" East a distance of 34.97 feet; Thence North 87°20'18" East a distance of 12.50 feet; Thence South 02°39'42" East a distance of 20.00 feet; Thence South 87°20'18" West a distance of 11.17 feet; Thence North 02°39'41" West a distance of 15.50 feet; Thence South 87°20'25" West a distance of 5.83 feet; Thence North 02°39'42" West a distance of 39.68 feet; Thence North 87°20'22" East a distance of 4.50 feet to the said Point of Beginning, Containing 0.01 acres of land, more or less.

3) (Lower Level Boutique Hotel Property Buildings 2 and 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 23, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 709.51 and 723.11 based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°19'58" West a distance of 570.97 feet to the Point of Beginning; Thence South 09°47'10" East a distance of 41.22 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence South 09°47'10" East a distance of 49.53 feet; Thence North 80°12'50" East a distance of 102.86 feet; 0.87 feet; Thence South 09°47'10" East a distance of 10.25 feet; Thence North 80°16'20" East a distance of 47.58 feet; Thence North South 09°43'40" East a distance of 0.56 feet; Thence South 09°43'40" 80°16'20" East a distance of 22.45 feet; Thence South 73°08'49" West a East a distance of 45.64 feet; Thence North 16°51'12" West a distance of 3.33 feet; Thence North 03°46'09" East a distance of 20.96 feet; Thence North 09°43'40" West a distance of 77.00 feet; Thence North North 80°16'43" East a distance of 19.50 feet; Thence South 80°12'50" 09°47'10" West a distance of 77.86 feet; Thence North 09°47'10" West a West a distance of 75.87 feet; Thence South 80°12'50" West a distance of distance of 24.28 feet; Thence South 80°12'50" West a distance of

5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 9.33 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 21.92 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 2.83 feet; Thence North 80°12'50" East a distance of 91.00 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 4.54 feet; Thence North 02°39'35" West a distance of 2.89 feet; Thence North 87°27'35" East a distance of 33.65 feet to the said Point of Beginning, Containing 0.29 acres of land, more or less.

4) (Area below Retail space in Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 709.61 and 720.02 based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°19'58" West a distance of 570.97 feet; Thence South 09°47'10" East a distance of 43.22 feet to the Point of Beginning; Thence continuing South 09°47'10" East a distance of 49.53 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence North 09°47'10" West a distance of 49.53 feet; Thence North 80°12'50" East a distance of 29.43 feet to the said Point of Beginning, Containing 0.09 acres of land, more or less, 1,457 square feet of land, more or less.

5) (Boutique Units Above Second Floor of Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 751.77 and 782.95, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°24'47" West a distance of 439.54 feet to the Point of Beginning; Thence South 02°39'35" East a distance of 13.00 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'35" East a distance of 16.00 feet; Thence South 87°20'25" West a distance of 5.12 feet; Thence South 02°39'35" East a distance of 27.00 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'35" East a distance of 16.00 feet; Thence South 87°20'25" West a distance of 5.12 feet; Thence South 02°39'35" East a distance of 24.83 feet; Thence North 87°20'25" East a distance of

5.12 feet; Thence South 02°39'35" East a distance of 31.19 feet; Thence South 87°20'22" West a distance of 16.14 feet; Thence South 09°47'10" East a distance of 98.09 feet; Thence South 80°12'50" West a distance of 31.33 feet; Thence North 09°47'10" West a distance of 0.67 feet; Thence South 80°12'50" West a distance of 112.00 feet; Thence North 09°47'10" West a distance of 25.34 feet; Thence South 80°12'50" West a distance of 5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence North 80°12'50" East a distance of 5.33 feet; Thence North 09°47'10" West a distance of 10.67 feet; Thence North 80°12'50" East a distance of 28.92 feet; Thence North 09°47'10" West a distance of 4.59 feet; Thence North 80°12'50" East a distance of 15.13 feet; Thence South 09°47'10" East a distance of 4.83 feet; Thence North 80°12'50" East a distance of 13.12 feet; Thence North 09°47'10" West a distance of 4.83 feet; Thence North 80°12'50" East a distance of 28.51 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 4.54 feet; Thence North 02°39'35" West a distance of 31.92 feet; Thence North 87°20'25" East a distance of 4.50 feet; Thence North 02°39'35" West a distance of 12.00 feet; Thence South 87°20'25" West a distance of 5.17 feet; Thence North 02°39'35" West a distance of 14.67 feet; Thence North 87°20'25" East a distance of 0.67 feet; Thence North 02°39'35" West a distance of 27.67 feet; Thence South 87°20'25" West a distance of 0.67 feet; Thence North 02°39'35" West a distance of 14.67 feet; Thence North 87°20'25" East a distance of 0.67 feet; Thence North 02°39'35" West a distance of 28.60 feet; Thence North 87°20'25" East a distance of 23.00 feet; Thence North 02°39'35" West a distance of 4.33 feet; Thence North 87°20'25" East a distance of 19.96 feet; Thence South 02°39'35" East a distance of 4.83 feet; Thence North 87°20'25" East a distance of 30.71 feet to the said Point of Beginning, Containing 0.50 acres of land, more or less.

6) (BCN North 1) A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Commencing at the West Common Corner of Lots 2 and 6 of said Branson Landing, said point being on the Easterly line of said Lot 1; thence North 17° 51' 25" West along the Easterly line of Lot 1, 124.88 feet, to the POINT OF BEGINNING; thence Southwesterly along a segment of a curve to the left having an arc length of 143.97 feet (said curve having a chord bearing and distance of South 53° 56' 47" West 142.38 feet and a radius of 423.51 feet); thence Westerly along a curve to the right having an arc length of 312.42 feet (said curve having a chord bearing and distance of South 59° 35' 10" West 308.69 feet and a radius of 592.00 feet); thence Southwesterly along a curve to the left having an arc length of 112.34 feet (said curve having a chord bearing and distance of South 62° 11' 37" West 111.41 feet and a radius of 252.00 feet); thence South 49° 25' 21" West 52.41 feet; thence North 85° 34' 39" West 13.45 feet; thence North 40° 34' 39" West 87.00 feet; thence

38

North 49° 25' 21" East 5.00 feet; thence North 40° 34' 39" West 105.18 feet to a point on the Northerly line of said Lot 1, Branson Landing, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along the North line of Lot 1, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek to the West Common Corner of Lots 1 and 2, Branson Landing; thence North 89° 06' 53" East along the common line between said Lots 1 and 2, 30.55 feet; thence North 14° 23' 02" East along common line 162.47 feet; thence South 05° 47' 58" East along common line 346.00 feet; thence South 19° 45' 58" East along common line 258.00 feet; thence South 17° 51' 25" East along common line 32.78 feet to the point of beginning; containing 3.75 acres, more or less.

7) (HCW North 2) A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Beginning at a corner of said Lot 1, being the intersection of the New R/W of Missouri Pacific Railroad and the Easterly R/W of U.S. Business Highway No. 65; thence North 23° 51' 47" West along Easterly R/W 250.40 feet; thence South 85° 20' 18" East along the North line of Lot 1, 107.03 feet; thence Easterly along North line on a spiral curve to the right with a delta of 9.00°, a spiral length of 300.00 feet and a center line of the central circle being a 6.00° curve to the right (said curve having a chord bearing and distance of South 85° 12' 01" East 65.84 feet); thence South 05° 04' 04" West along North line 164.01 feet; thence North 71° 17' 24" East along North line 24.40 feet to a point, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along North line, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek, to a point which bears North 47° 49' 27" East 265.13 feet; thence South 40° 34' 39" East 115.98 feet; thence North 49° 25' 21" East 5.00 feet; thence South 40° 34' 39" East 169.47 feet; thence Southerly along a curve to the left having an arc length of 208.64 feet (said curve having a radius of 1335.00 feet); thence south 32° 31' 02" West 50.59 feet to a point on the Westerly line of said Lot 1 and the Easterly R/W of said Missouri Pacific Railroad; thence Northwesterly along a segment of a curve to the left having an arc length of 324.13 feet (said segment having a chord bearing and distance of North 46° 54' 38" West 322.67 feet and having a radius of 984.93 feet) to P.S.C. Sta 3961+21.6 and 30 feet right; thence Westerly along a spiral curve to the left with a delta of 9.00°, a spiral length of 300.00 feet and the center line of the central spiral length of 300.00 feet and the center line of the central circle 6.00° to the left (having a chord bearing and distance of North 82° 11' 25" West 291.85 feet) to the point of beginning; containing 2.51 acres, more or less.

8) Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building

9, known as and being a portion of THE BOARDWALK AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Boardwalk at Branson Landing Condominium as recorded in Book 495, pages 3605-3638, as corrected in Book 495, pages 8477-8483 and amended in Book 499, pages 3020-3026 (collectively, the Declaration), and as platted in Plat Book/Slide I, pages 62-73.

9) Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 10, known as and being a part of THE BOARDWALK AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Boardwalk at Branson Landing Condominium as recorded in Book 495, pages 3605-3638, as corrected in Book 495, pages 8477-8483 and amended in Book 499, pages 3020-3026 (collectively, the Declaration), and as platted in Plat Book/Slide I, pages 151-162.

10) Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 2, known as and being a part of THE PROMENADE AT BRANSON LANDING CONDOMINIUM, a condominium as created per the Declaration of the Promenade at Branson Landing Condominium as recorded in Book 499, pages 1405-1442 (collectively, the Declaration) and as platted in Plat Book/Slide I, pages 133-139.

11) Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 3, known as and being a part of THE PROMENADE AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Promenade at Branson Landing Condominium as recorded in Book 499, pages 1405-1442 (collectively, the Declaration) and as platted in Plat Book/Slide I, pages 140-147.

## Arvest's Judgment - Northwest Tracts

A part of Lot 1, BRANSON LANDING; a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Commencing at the West Common Corner of Lots 2 and 6 of said Branson Landing, said point being on the Easterly line of said Lot 1; thence North 17° 51' 25" West along the Easterly line of Lot 1, 124.88 feet, to the POINT OF BEGINNING; thence Southwesterly along a segment of a curve to the left having an arc length of 143.97 feet (said curve having a chord bearing and distance of South 53° 56' 47" West 142.38 feet and a radius of 423.51 feet); thence Westerly along a curve to the right having an arc length of 312.42 feet (said curve having a chord bearing and distance of South 59° 35' 10" West 308.69 feet and a radius of 582.00 feet); thence Southwesterly along a curve to the left having an arc length of 112.34 feet (said curve having a chord bearing and distance of South 62° 11' 37" West 111.41 feet and a radius of 252.00 feet); thence South 49° 25' 21" West 62.41 feet; thence North 85° 34' 39" West 19.45 feet; thence North 40° 34' 39" West 87.00 feet; thence North 49° 25' 21" East 5.00 feet; thence North 40° 34' 39" West 105.18 feet to a point on the Northerly line of said Lot 1, Branson Landing, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along the North line of Lot 1, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek to the West Common Corner of Lots 1 and 2, Branson Landing; thence North 89° 06' 53" East along the common line between said Lots 1 and 2, 30.55 feet; thence North 14° 23' 02" East along common line 162.47 feet; thence South 05° 47' 58" East along common line 346.00 feet; thence South 10° 45' 58" East along common line 258.00 feet; thence South 17° 51' 25" East along common line 32.78 feet to the point of beginning; containing 3.75 acres, more or less; which said exception was reserved for lease to HCW North.

---

A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Beginning at the corner of said Lot 1, being the intersection of the New R/W of Missouri Pacific Railroad and the Easterly R/W of U.S. Business Highway No. 65; thence North 23° 51' 47" West along Easterly R/W 250.40 feet; thence South 85° 20' 18" East along the North line of Lot 1, 107.03 feet; thence Easterly along North line on a spiral curve to the right with a delta of 9.00°, a spiral length of 300.00 feet and a center line of the central circle being a 6.00° curve to the right (said curve having a chord bearing and distance of South 85° 12' 01" East 65.84 feet); thence South 05° 04' 04" West along North line 164.01 feet; thence North 71° 17' 24" East along North line 24.40 feet to a point, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S.

elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along North line, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek, to a point which bears North 47° 49' 27" East 265.19 feet; thence South 40° 34' 39" East 115.98 feet; thence North 49° 25' 21" East 5.00 feet; thence South 40° 34' 39" East 169.47 feet; thence Southerly along a curve to the left having an arc length of 208.64 feet (said curve having a radius of 1335.00 feet); thence south 32° 31' 02" West 50.59 feet to a point on the Westerly line of said Lot 1 and the Easterly R/W of said Missouri Pacific Railroad; thence Northwesterly along a segment of a curve to the left having an arc length of 324.13 feet (said segment having chord bearing and distance of North 66° 54' 38" West 322.67 feet and having a radius of 984.93 feet) to P.S.C. Sta 9961+21.6 and 30 feet right; thence Westerly along a spiral curve to the left with a delta of 9.00°, a spiral length of 300.00 feet and the center line of the central circle 6.00° to the left (having a chord bearing and distance of North 82° 11' 25" West 291.85 feet) to the point of beginning; containing 2.51 acres, more or less.

## Western Peninsula

A tract of land being a part of the Southeast Quarter of the Northwest Quarter and a part of the Northeast Quarter of the Southwest Quarter of Section 33, Township 23 North, Range 21 West, being more particularly described as follows: Beginning at the Northeast corner of Park Addition to the City of Branson, Missouri; thence North 2°19' West to the southerly bank of Roark Creek; thence in a southerly direction with the easterly and southerly bank of said Roark Creek to the northerly line of said Park Addition; thence easterly to the Point of Beginning, all bearings being referenced to the centerline of Sycamore Street as being due North and South.

## Branson Town

Beginning at a point on the left bank, descending of White River, where the Quarter Section line of Section 33, Township 23, Range 21, running east and west, intersects said bank, more particularly marked by two Sycamore trees, bearing three vertical axe marks; thence West 80 feet to a point; thence South 250 feet to a point, thence West 188 feet to an iron stake; thence South 17°42' East a distance of 360.4 feet to an iron stake; thence South 21°29' East a distance of 377.5 feet to an iron stake; thence South 27°40' East a distance of 378.6 feet to an iron stake; thence North 79°30' East a distance of 85.3 feet to an iron stake on the left bank descending of White River; thence upon the same course North 79°30' East a distance of 10 feet to the edge of left bank of White River descending; thence along said bank with the meanderings of White River to the Point of Beginning. All lying in Section 33, Township 23, Range 21, in Taney County, Missouri containing 5.75 acres more or less.

## Park Addition

All of Blocks 3, 4 and 5 of Park Addition, formerly a subdivision in the City of Branson, Taney County, Missouri;

## Retail North - Exhibit A

<u>EXHIBIT A</u>

All of that part of the following property that is situated within the Northeast Quarter of the Southwest Quarter of Section 33, Township 23 North, Range 21 West, in Taney County, Missouri:

Lots 1, 3 and 4, BRANSON LANDING, a subdivision as per the recorded plat thereof, Plat Book/Slide G, pages 767-770, of the Taney County Recorder's Office, City of Branson, Taney County, Missouri,

ALSO, a part of Lot 6, BRANSON LANDING, a subdivision as per the recorded plat thereof, Plat Book/Slide G, pages 767-770, of the Taney County Recorder's Office, City of Branson, Taney County, Missouri, being more particularly described as follows:

1) (B-1) Beginning at the Southwest corner of said Lot 6; thence North 26° 46' 18" West along the Westerly line of said Lot 6, 203.35 feet; thence North 74° 49' 13" East 23.01 feet; thence South 15° 10' 47" East 105.00 feet; thence South 60° 10' 47" East 84.85 feet; thence South 15° 10' 47" East 38.20 feet to a point on the South line of said Lot 6; thence South 80° 13' 42" West along South line 42.33 feet to the point of beginning; containing 0.10 acres, more or less; and

2) (B-2) Commencing at the Southwest corner of said Lot 6; thence North 26° 46' 18" West along the Westerly line of said Lot 6, 231.69 feet to the POINT OF BEGINNING; thence continuing North 26° 46' 18" West along Westerly line 146.91 feet; thence North 20° 45' 18" West along Westerly line 93.53 feet; thence North 67° 24' 07" East 61.25 feet; thence South 22° 35' 53" East 240.00 feet; thence South 67° 24' 07" West 53.56 feet to the point of beginning, containing 0.33 acres, more or less.

Together with those appurtenant easements as set forth in the Branson Landing Agreement Regarding Ratification, Confirmation and Acknowledgement, as recorded in Book 500, pages 2591-2601.

Together with those appurtenant easements as set forth in the Amendment, Severance and Ratification of Master Lease Agreement dated November 1, 2006, as recorded in Book 504, pages 1560.

LESS AND EXCEPT THE FOLLOWING TRACTS:

1) (Boutique Hotel Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 718.90 and 743.65, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 28°32'51" West a distance of 386.41 feet to the Point of Beginning; Thence South 02°39'39" East a distance of 31.86 feet; Thence North 87°20'21" East a distance of 6.69 feet; Thence South 02°39'54" East a distance of 1.94 feet; Thence North 87°20'22" East a distance of 5.00 feet; Thence South 02°39'42" East a distance of 13.58 feet; Thence South 87°20'22" West a distance of 4.50 feet; Thence North 02°39'42" West a distance of 2.00 feet; Thence South 87°20'22" West a distance of 7.92 feet; Thence South 02°39'38" East a distance of 2.00 feet; Thence South 87°20'22" West a distance of 9.75 feet; Thence South

44

02°39'38" East a distance of 168.00 feet; Thence North 87°20'22" East a distance of 5.21 feet; Thence South 09°47'09" East a distance of 16.37 feet; Thence South 80°12'50" West a distance of 90.33 feet; Thence North 09°47'10" West a distance of 36.94 feet; Thence North 80°12'50" East a distance of 6.05 feet; Thence North 09°47'10" West a distance of 14.73 feet; Thence North 80°12'50" East a distance of 38.08 feet; Thence North 02°39'38" West a distance of 7.29 feet; Thence North 80°12'50" East a distance of 6.19 feet; Thence North 02°39'38" West a distance of 14.86 feet; Thence South 87°20'22" West a distance of 51.76 feet; Thence North 02°39'38" West a distance of 38.79 feet; Thence North 87°20'22" East a distance of 51.76 feet; Thence North 02°39'38" West a distance of 15.11 feet; Thence North 85°32'09" West a distance of 6.19 feet; Thence North 02°39'39" West a distance of 7.73 feet; Thence North 85°32'09" West a distance of 42.58 feet; Thence North 10°03'02" West a distance of 54.12 feet; Thence South 79°56'58" West a distance of 2.67 feet; Thence North 09°47'10" West a distance of 12.83 feet; Thence North 80°12'50" East a distance of 10.92 feet; Thence North 09°47'10" West a distance of 7.21 feet; Thence North 73°52'12" East a distance of 87.55 feet; Thence North 02°39'39" West a distance of 0.50 feet; Thence North 87°20'21" East a distance of 13.87 feet to the said Point of Beginning, Containing 0.43 acres of land, more or less.

2) (Boutique Hotel Below Condominium Units Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 723.65 and 739.53, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 26°28'59" West a distance of 432.64 feet to the Point of Beginning; Thence North 87°20'22" East a distance of 9.75 feet; Thence South 02°39'38" East a distance of 158.46 feet; Thence North 87°20'25" East a distance of 12.26 feet; Thence South 09°41'54" East a distance of 6.72 feet; Thence North 87°35'35" East a distance of 11.48 feet; Thence South 09°47'10" East a distance of 67.42 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence South 09°47'10" East a distance of 26.40 feet; Thence South 80°12'50" West a distance of 85.48 feet; Thence North 09°47'10" West a distance of 25.34 feet; Thence South 80°12'50" West a distance of 5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 33.08 feet; Thence North 80°12'50" East a distance of 91.00 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 5.21 feet; Thence North 02°39'38" West a distance of 168.00 feet to the said Point of Beginning, Containing 0.25 acres of land, more or less;

AND, That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 720.54 and 739.53, based on NAVD 1988, Being more particularly described as follows:

commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 23°51'18" West a distance of 422.29 feet to the Point of Beginning; Thence South 02°39'42" East a distance of

45

34.97 feet; Thence North 87°20'18" East a distance of 12.50 feet; Thence South 02°39'42" East a distance of 20.00 feet; Thence South 87°20'18" West a distance of 11.17 feet; Thence North 02°39'42" West a distance of 15.50 feet; Thence South 87°20'25" West a distance of 5.83 feet; Thence North 02°39'42" West a distance of 39.48 feet; Thence North 87°20'22" East a distance of 4.50 feet to the said Point of Beginning, Containing 0.01 acres of land, more or less.

3) (Lower Level Boutique Hotel Property Buildings 2 and 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 709.61 and 723.11 based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°19'58" West a distance of 570.97 feet to the Point of Beginning; Thence South 09°47'10" East a distance of 43.22 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence South 09°47'10" East a distance of 49.53 feet; Thence North 80°12'50" East a distance of 0.87 feet; Thence South 09°47'10" East a distance of 102.86 feet; Thence North 80°16'20" East a distance of 10.25 feet; Thence South 09°43'40" East a distance of 47.58 feet; Thence North 80°16'20" East a distance of 0.56 feet; Thence South 09°43'40" East a distance of 22.45 feet; Thence South 73°08'49" West a distance of 45.64 feet; Thence North 16°51'12" West a distance of 3.33 feet; Thence North 03°46'09" East a distance of 20.96 feet; Thence North 09°43'40" West a distance of 77.00 feet; Thence North 80°16'43" East a distance of 19.50 feet; Thence North 09°47'10" West a distance of 77.86 feet; Thence South 80°12'50" West a distance of 75.87 feet; Thence North 09°47'10" West a distance of 24.28 feet; Thence South 80°12'50" West a distance of 5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 8.33 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 21.92 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 2.83 feet; Thence North 80°12'50" East a distance of 91.00 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 4.54 feet; Thence North 02°39'35" West a distance of 2.89 feet; Thence North 87°27'35" East a distance of 33.65 feet to the said Point of Beginning, Containing 0.29 acres of land, more or less.

4) (Area below Retail space in Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 709.61 and 720.02 based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°19'58" West a distance of 570.97 feet; Thence South 09°47'10" East a distance of 43.22 feet to the Point of Beginning; Thence continuing South 09°47'10" East a distance of 49.53 feet; Thence South 80°12'50" West a distance of 29.43 feet; Thence North 09°47'10" West a distance of 49.53 feet; Thence North 80°12'50" East a distance of 29.43 feet to the said

Point of Beginning, Containing 0.09 acres of land, more or less, 1,457 square feet of land, more or less.

5) (Boutique Units Above Second Floor of Building 3) That portion of Lot 1 of Branson Landing, a subdivision recorded in Plat Book /Slide G, at Pages 767 through 770 of the Taney County Recorder's Office, said parcel being situated in the Southeast Quarter (SE1/4) of the Southwest Quarter (SW1/4) of Section 33, Township 23 North, Range 21 West of the fifth principal meridian, in the City of Branson, Taney County, Missouri, laying between the elevations of 751.77 and 782.95, based on NAVD 1988, Being more particularly described as follows:

Commencing at the Southeast corner of Lot 6 of said Branson Landing; Thence South 79°20'35" West a distance of 103.60 feet to the Southwest corner of Lot 6; Thence South 15°24'47" West a distance of 439.54 feet to the Point of Beginning; Thence South 02°39'35" East a distance of 13.00 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'38" East a distance of 16.00 feet; Thence South 87°20'25" West a distance of 5.12 feet; Thence South 02°39'35" East a distance of 27.00 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'38" East a distance of 16.00 feet; Thence South 87°20'25" West a distance of 5.12 feet; Thence South 02°39'35" East a distance of 24.83 feet; Thence North 87°20'25" East a distance of 5.12 feet; Thence South 02°39'38" East a distance of 31.19 feet; Thence South 87°20'22" West a distance of 16.14 feet; Thence South 09°47'10" East a distance of 88.09 feet; Thence South 80°12'50" West a distance of 31.33 feet; Thence North 09°47'10" West a distance of 0.67 feet; Thence South 80°12'50" West a distance of 112.00 feet; Thence North 09°47'10" West a distance of 25.34 feet; Thence South 80°12'50" West a distance of 5.33 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence South 80°12'50" West a distance of 0.67 feet; Thence North 09°47'10" West a distance of 12.00 feet; Thence North 80°12'50" East a distance of 0.67 feet; Thence North 09°47'10" West a distance of 7.83 feet; Thence North 80°12'50" East a distance of 5.33 feet; Thence North 09°47'10" West a distance of 20.67 feet; Thence North 80°12'50" East a distance of 28.92 feet; Thence North 09°47'10" West a distance of 4.59 feet; Thence North 80°12'50" East a distance of 15.13 feet; Thence South 09°47'10" East a distance of 4.83 feet; Thence North 80°12'50" East a distance of 13.12 feet; Thence North 09°47'10" West a distance of 4.83 feet; Thence North 80°12'50" East a distance of 28.51 feet; Thence North 09°47'09" West a distance of 16.37 feet; Thence South 87°20'22" West a distance of 4.54 feet; Thence North 02°39'35" West a distance of 31.02 feet; Thence North 87°20'25" East a distance of 4.50 feet; Thence North 02°39'35" West a distance of 12.00 feet; Thence South 87°20'25" West a distance of 5.17 feet; Thence North 02°39'35" West a distance of 14.67 feet; Thence North 87°20'25" East a distance of 0.67 feet; Thence North 02°39'35" West a distance of 27.67 feet; Thence South 87°20'25" West a distance of 0.67 feet; Thence North 02°39'35" West a distance of 14.67 feet; Thence North 87°20'25" East a distance of 0.67 feet; Thence North 02°39'35" West a distance of 28.50 feet; Thence North 87°20'25" East a distance of 23.00 feet; Thence North 02°39'35" West a distance of 4.33 feet; Thence North 87°20'25" East a distance of 19.96 feet; Thence South 02°39'35" East a distance of 4.83 feet; Thence North 87°20'25" East a distance of 30.71 feet to the said Point of Beginning, Containing 0.50 acres of land, more or less.

6) (HCW North 1) A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows:

Commencing at the West Common Corner of Lots 2 and 6 of said Branson Landing, said point being on the Easterly line of said Lot 1; thence North 17° 51' 25" West along the

Easterly line of Lot 1, 124.88 feet, to the POINT OF BEGINNING; thence Southwesterly along a segment of a curve to the left having an arc length of 143.97 feet (said curve having a chord bearing and distance of South 53° 56' 47" West 142.38 feet and a radius of 423.51 feet); thence Westerly along a curve to the right having an arc length of 312.42 feet (said curve having a chord bearing and distance of South 59° 35' 10" West 308.69 feet and a radius of 582.00 feet); thence Southwesterly along a curve to the left having an arc length of 112.34 feet (said curve having a chord bearing and distance of South 62° 11' 37" West 111.41 feet and a radius of 252.00 feet); thence South 49° 25' 21" West 62.41 feet; thence North 85° 34' 39" west 19.45 feet; thence North 40° 34' 39" West 87.00 feet; thence North 49° 25' 21" East 5.00 feet; thence North 40° 34' 39" West 105.18 feet to a point on the Northerly line of said Lot 1, Branson Landing, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along the North line of Lot 1, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek to the West Common Corner of Lots 1 and 2, Branson Landing; thence North 89° 06' 53" East along the common line between said Lots 1 and 2, 30.55 feet; thence North 14° 23' 02" East along common line 162.47 feet; thence South 05° 47' 58" East along common line 346.00 feet; thence South 10° 45' 58" East along common line 258.00 feet; thence South 17° 51' 25" East along common line 32.78 feet to the point of beginning; containing 3.75 acres, more or less.

7) (HCW North 2) A part of Lot 1, BRANSON LANDING, a subdivision per the recorded plat thereof, Plat Book/Slide G, pages 767-770 of the Taney County Recorder's Office, being more particularly described as follows;

Beginning at a corner of said Lot 1, being the intersection of the New R/W of Missouri Pacific Railroad and the Easterly R/W of U.S. Business Highway No. 65; thence North 23° 51' 47" West along Easterly R/W 250.40 feet; thence South 85° 20' 18" East along the North line of Lot 1, 107.03 feet; thence Easterly along North line on a spiral curve to the right with a delta of 9.00°, a spiral length of 300.00 feet and a center line of the central circle being a 6.00° curve to the right (said curve having a chord bearing and distance of South 85° 12' 01" East 65.84 feet); thence South 05° 04' 04" West along North line 164.01 feet; thence North 71° 17' 24" East along North line 24.40 feet to a point, being a course 10.00 feet Northerly from the Southerly edge of Roark Creek, said Southerly edge being defined as the Ordinary High Water Mark (OHWM) U.S.G.S. elevation of 703.00 as established by the U.S. Army Corps of Engineers; thence Northeasterly along North line, said line being 10.00 feet Northerly and parallel to said OHWM of Roark Creek, to a point which bears North 47° 49' 27", East 265.19 feet; thence South 40° 34' 39" East 115.98 feet; thence North 49° 25' 21" East 5.00 feet; thence South 40° 34' 39" East 169.47 feet; thence Southerly along a curve to the left having an arc length of 208.64 feet (said curve having a radius of 1335.00 feet); thence South 32° 31' 02" West 50.59 feet to a point on the Westerly line of said Lot 1 and the Easterly R/W of said Missouri Pacific Railroad; thence Northwesterly along a segment of a curve to the left having an arc length of 324.13 feet (said segment having a chord bearing and distance of North 66° 54' 38" West 322.67 feet and having a radius of 984.93 feet) to P.S.C. Sta 9961+21.6 and 30 feet right; thence Westerly along a spiral curve to the left with a delta of 9.00°, a spiral length of 300.00 feet and the center line of the central circle 6.00° to the left (having a chord bearing and distance of North 82° 11' 25" West 291.85 feet) to the point of beginning; containing 2.51 acres, more or less.

8) Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of

Building 9, known as and being a portion of THE BOARDWALK AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Boardwalk at Branson Landing Condominium as recorded in Book 495, pages 3605-3638, as corrected in Book 495, pages 8477-8483 and amended in Book 499, pages 3020-3026 (collectively, the Declaration), and as platted in Plat Book/Slide I, pages 62-73.

9)  Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 10, known as and being a part of THE BOARDWALK AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Boardwalk at Branson Landing Condominium as recorded in Book 495, pages 3605-3638, as corrected in Book 495, pages 8477-8483 and amended in Book 499, pages 3020-3026 (collectively, the Declaration), and as platted in Plat Book/Slide I, pages 151-162.

10)  Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 2, known as and being a part of THE PROMENADE AT BRANSON LANDING CONDOMINIUM, a condominium as created per the Declaration of the Promenade at Branson Landing Condominium as recorded in Book 499, pages 1405-1442 (collectively, the Declaration) and as platted in Plat Book/Slide I, pages 133-139.

11)  Those Condominium Units and Parking Units (both as defined in the Declaration) contained in the air space above and below the ground floor level (but not including the ground floor level) of Building 3, known as and being a part of THE PROMENADE AT BRANSON LANDING CONDOMINIUM, a condominium created as per the Declaration of the Promenade at Branson Landing Condominium as recorded in Book 499, pages 1405-1442 (collectively, the Declaration) and as platted in Plat Book/Slide I, pages 140-147.

49

## Retail North - Exhibit B



## Eastern Peninsula

All that part of the Southeast quarter of the Northwest quarter and of the Northeast quarter of the Southwest quarter of Section Thirty-three, (33), Twp 23 North, Range 21 West described as follows: Beginning at a point on the left bank of White River in said NE ¼ of the SW ¼, Said point being 250 ft. South of the North line of said NE ¼ of SW ¼; thence west to a point on the high bench, 268 feet distance from the high bank of White River; thence on azimuths from magnetic North, North 13 degrees 48 minutes West 258 feet; thence North 8 degrees 50 minutes east, 346 feet, thence South 11 degrees 21 minutes West to an intersection with the east bank of Roar Creek; then along the east and South banks of Roark Creek to the confluence with White River; thence following the meander of said River bank to the point of beginning excepting a strip 80 feet wide along the said river bank in said northeast ¼ of the southwest ¼ not belonging to the estate of said Henry H. Compton Deceased. Containing 3.36 acres more or less, the said parties of the first part retaining possession of so much of such premises not actually to be submerged by the lake water of a dam being constructed in White River, as may be necessary according to the rise and fall of said lake water for the maintenance of and access to a landing for their ferry along the back water in Roark Creek the party of the second party hereby consenting to the like maintenance of a ferry landing in the opposite bank of White River in the Southeast fr'l ¼ of the N.W. ¼ of said Section 33, in so far as said party of the second part's interest in and to said SE fr'l ¼ of the N.W. ¼ may be concerned.